Heather M. Lopez (SBN 354022)
**MILBERG, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90210
Tel:  (858) 209-6941
Email: hlopez@milberg.com

Albert J. Plawinski*
**PLAWINSKI, PLLC**
2101 Pearl Street
Boulder, Colorado 80302
Telephone: (303) 720-7095
Email: albert@plawinski.law

*Pro Hac Vice Admission forthcoming*

*Counsel for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GARY FEDOROFF, individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> v. <br><br> ROCKET MORTGAGE, LLC, a Michigan limited liability company, <br><br> *Defendant.* | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. **VIOLATION OF THE ELECTRONIC PRIVACY ACT, 18 U.S.C. § 2510, *et seq.*** <br> 2. **VIOLATIONS OF CAL. PENAL CODE § 631, *et seq.*;** <br> 3. **VIOLATION OF THE CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT ("CDAFA");** <br> 4. **VIOLATIONS OF CAL. BUS. & PROF. CODE § 17200, *et seq.*;** <br> 5. **VIOLATIONS OF CAL. CONST. ART. 1 § 1;** <br> 6. **NEGLIGENCE;** <br> 7. **INTRUSION UPON SECLUSION; AND** <br> 8. **BREACH OF CONFIDENCE.** |

Plaintiff Gary Fedoroff brings this class action complaint individually and on behalf of all others similarly situated against Defendant Rocket Mortgage, LLC ("Rocket Mortgage") for unlawfully disclosing consumer's sensitive mortgage application information with third parties

1
**CLASS ACTION COMPLAINT**

without consent. Plaintiff brings this action based on personal knowledge of the facts pertaining to himself, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

1.      Defendant Rocket Mortgage is one of the largest online mortgage lenders that operates a website www.rocketmortgage.com (the "Website"). Consumers can apply for a mortgage or a mortgage refinance directly on the Rocket Mortgage Website.

2.      When applying for a home mortgage or a mortgage refinance, consumers provide a wealth of personal information to Rocket Mortgage so that Defendant may determine their loan eligibility and amount. Unknown to consumers, Rocket Mortgage embedded web trackers on its website that transmit the contents of the loan applications to third parties entirely without consumers knowledge or consent.

3.      Indeed, Rocket Mortgage disclosed sensitive information contained in the loan application including, but not limited to, Plaintiff's and the Class Members' names, email addresses, phone numbers, marital status, status as a military veteran, loan amount, purchase amount, information about down payments, whether the consumer underwent a foreclosure or a bankruptcy, the loan type, their status as a homeowner, information about their monthly payment, and information about their credit worthiness.

4.      Unsurprisingly, Rocket Mortgage puts profits before people and failed to inform Plaintiff and the Class of its egregious practice of disclosing consumers' sensitive financial information—let alone obtain the sufficient consent as mandated under the Gramm-Leach-Bliley Act and related state statutes.

5.      Confidentiality is paramount in the financial industry. Despite the legal and ethical duties to protect consumers' financial information, Defendant Rocket Mortgage undermined the importance of safeguarding consumers' financial information breaching consumers trusts.

6.      Neither Plaintiff nor any other Class Member signed a written authorization permitting Defendant to send their Private Information to Facebook or Google.

7.      Defendant breached its statutory and common law obligations to Plaintiff and Class

**CLASS ACTION COMPLAINT**

Members by, inter alia,: (i) aiding and/or procuring the interception of Plaintiff's and Class Members' communications; (ii) failing to remove or disengage Tracking Technologies that are known and designed to share consumers' information; (iii) failing to obtain the written consent of Plaintiff and Class Members to disclose their Private Information to various third parties; (iv) failing to take steps to block the transmission of Plaintiff's and Class Members' Private Information through Tracking Technologies like the Segment, Meta Pixel, or Google Analytics; (v) failing to warn Plaintiff and Class Members; and (vi) otherwise failing to design and monitor its Website to maintain the confidentiality and integrity of patient Private Information.

8.     As a result of Defendant's conduct, Plaintiff and Class Members have suffered numerous injuries, including: (i) invasion of privacy; (ii) loss of benefit of the bargain, (iii) diminution of value of the Private Information, (iv) statutory damages, and (v) the continued and ongoing risk to their Private Information.

9.     Plaintiff seeks to remedy these harms and brings causes of action for (1) violation of the Electronics Communication Privacy Act ("ECPA") 18 U.S.C. § 2511(1) – unauthorized interception, use, and disclosure; (2) Violation of the California Information Privacy Act ("CIPA") Cal. Pen. Code § 631 *et seq*.; (3) Violation of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"); (4) Violation of the Unfair Competition Law Cal. Bus. & Prof. Code § 17200, *et seq*.; (5) Invasion of Privacy Under California's Constitution; (6) Negligence; (7) Intrusion Upon Seclusion; and (8) Breach of Confidence.

**PARTIES**

10.     Plaintiff Gary Fedoroff is a natural person and citizen of the State of California.

11.     Defendant Rocket Mortgage, LLC is a limited liability company organized and existing under the laws of the State of Michigan with its principal place of business located at 1050 Woodward Avenue, Detroit, Michigan 48226. Defendant conducts business throughout this District including soliciting business in this District and employing loan offices that conduct business on behalf of Defendant in this District.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because

(i) at least one member of the Class is a citizen of a different state than any Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

13.    This Court has personal jurisdiction over Defendant because Defendant conducts business in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District.

14.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, in a substantial part, in the District.

## COMMON FACTUAL ALLEGATIONS

### A.    Consumer's Financial Information Is Sensitive and Confidential

15.    As a financial institution primarily engaged in lending, Rocket Mortgage is subject to federal obligation including the Gramm-Leach-Bliley Act ("GLBA") and the state statute such as the California Financial Information Privacy Act ("CFIPA").

### i.    *Defendant failed to Comply with GLBA*

16.    Defendant is a financial institution, as that term is defined by Section 509(3)(A) of the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6809(3)(A), and thus is subject to the GLBA.

17.    The GLBA defines a financial institution, as "any institution the business of which is engaging in financial activities as described in Section 1843(k) of Title 12 [The Bank Holding Company Act of 1956]." 15 U.S.C. § 6809(3)(A).

18.    Defendant collects nonpublic personal information, as defined by 15 U.S.C. § 6809(4)(A), 16 C.F.R. § 313.3(n) and 12 C.F.R. § 1016.3(p)(1). Accordingly, during the relevant time period Defendant were subject to the requirements of the GLBA, 15 U.S.C. §§ 6801.1, *et seq.*, and is subject to numerous rules and regulations promulgated on the GLBA statutes.

19.    Pursuant to the GLBA "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 18 U.S.C.§ 6801(a).

20.    These obligations apply to any information a consumer furnishes to a financial

institution when applying for a loan or obtaining any other financial product or service. The GLBA defines, "nonpublic personal information" as "personally identifiable financial information." 16 C.F.R. § 313.3(n)(1). The GLBA further defines personally identifiable financial information as any information:

> (i) A consumer provides to you to obtain a financial product or service from you;

> (ii) About a consumer resulting from any transaction involving a financial product or service between you and a consumer; or

> (iii) You otherwise obtain about a consumer in connection with providing a financial product or service to that consumer. 16 C.F.R. § 313.3(o)(1).

21.     The GLBA provides specific examples of what information constitutes "personally identifiable financial information" including

> Information a **consumer provides to you on an application to obtain a loan**, credit card, or other financial product or service;

> The fact that an **individual is or has been one of your customers** or has obtained a financial product or service from you;

> Any information about your consumer if it is disclosed in a manner that **indicates that the individual is or has been your consumer**. 16 C.F.R. 313.3(o)(2)(A)-(D) (emphasis added).

22.     Indeed, the GLBA prohibits financial institutions—like Rocket Mortgage—from disclosing nonpublic personal information to a nonaffiliated third party unless—

> (A) such financial institution **clearly and conspicuously** discloses to the consumer …that such information may be disclosed to such third party;

> (B) the consumer is given the opportunity, **before the time that such information is initially disclosed,** to direct that such information not be disclosed to such third party; and

> (C) the consumer is given an explanation of how the consumer can exercise that nondisclosure option. 15 U.S.C. § 6802(b) (emphasis added).

ii.      ***Defendant failed to comply with CFIPA***

23.     States also regulate the disclosure of consumers' financial information. The California Legislature enacted the California Financial Information Privacy Act because it found the "policies intended to protect financial privacy imposed by the Gramm-Leach-Bliley Act [to be] inadequate to meet the privacy concerns of California residents." Cal. Fin. Code § 4051.5. The CFIPA intended to

give California's the ability to control the disclosure of their nonpublic personal information by "requiring that financial institutions that want to share information with third parties and unrelated companies seek and acquire the affirmative consent of California consumers prior to sharing the information." *Id.*

24.     The CFIPA's author commented:

> [This law] will give consumers the final say in what happens to their personal financial information. The bill has been meticulously crafted and would be the strongest financial privacy bill in the nation, and will likely serve as a national model. ***It would generally require financial institutions such as banks, insurance companies and securities firms to get their customer's permission before they share a consumer's financial DNA with outside companies*** (opt-in)….Simply put, consumers should be the final arbiters of what happens to their personal financial information. And [this bill] will give them that right.

California Bill Analysis, S.B. 1 Assem., 8/18/2003 (emphasis added).

25.     The obligations under the CFIPA are simple: "a financial institution shall not sell, share, transfer, or otherwise disclose nonpublic personal information to or with any nonaffiliated third parties without the explicit prior consent of the consumer to whom the nonpublic personal information relates." Cal. Fin. Code § 4052.5.

26.     The CFIPA has a strict opt-in requirement allowing financial institutions to share consumer financial information at the direction of the consumer and upon obtaining a "consent acknowledgment" from the consumer that meets specific statutory requirements. Cal. Fin. Code § 4053(a)(1). "A financial institution shall utilize a form, statement, or writing to obtain consent to disclose nonpublic personal information to nonaffiliated third parties…. The form, statement, or writing shall meet all of the following criteria:

> (A) The form, statement, or writing is a separate document, not attached to any other document.

> (B) The form, statement, or writing is dated and signed by the consumer.

> (C) The form, statement, or writing clearly and conspicuously discloses that by signing, the consumer is consenting to the disclosure to nonaffiliated third parties of nonpublic personal information pertaining to the consumer.

> (D) The form, statement, or writing clearly and conspicuously discloses (i) that the consent will remain in effect until revoked or modified by the consumer; (ii) that the consumer may revoke the consent at any time; and (iii) the procedure for the consumer to revoke consent.

(E) The form, statement, or writing clearly and conspicuously informs the consumer that (i) the financial institution will maintain the document or a true and correct copy; (ii) the consumer is entitled to a copy of the document upon request; and (iii) the consumer may want to make a copy of the document for the consumer's records."

Cal. Fin. Code § 4053(a)(2).

**B.  Overview of Rocket Mortgage**

27.  Defendant Rocket Mortgage owns and operates a lending platform allowing consumers like Plaintiff and Class Members to apply for a mortgage online. Per Defendant's Website, "Rocket Mortgage® is an online mortgage experience and one of America's largest lenders." Defendant emphasizes that Rocket Mortgage is a real financial institution that consumers can use to obtain a loan:

> Rocket Mortgage® isn't a calculator; it's a way to get a mortgage. Just tell us about yourself, your home and your finances, and we'll give you real interest rates and numbers – not just our best guess.
>
> Then, Rocket Mortgage® will guide you through the mortgage process, from getting approved to closing to managing your payments. That expert guidance is a big reason why we've won so many awards for customer satisfaction.

28.  Defendant offers its lending services to consumers in all 50 states: "You can use Rocket Mortgage® to get a loan in all 50 states and the District of Columbia."

29.  Rocket Mortgage knows and appreciates that consumers require heightened security and privacy from financial institutions because of the nature of personal information being transmitted and shared with Rocket Mortgage. Accordingly, Rocket Mortgage assures consumers that their data is safe and secure through representations on its Website. Rocket Mortgage states that "We demonstrate our commitment to fair information practice by adopting industry-leading privacy guidelines. Rocket Mortgage doesn't share your info with outside companies for their promotional use without your consent."

**C.  Rocket Mortgage Installed Invasive Tracking Technologies on Its Website**

30.  The third-party trackers, (collective referred to as "Tracking Technologies" herein) that Defendant installed on its Website gather a vast assortment of sensitive financial data from consumers. The installation of these trackers and consequently the transmission of consumer data is within Defendant's exclusive control.

**CLASS ACTION COMPLAINT**

31.     When an individual accesses a Website containing an online Tracking Technology, the tracker instantaneously and surreptitiously duplicates communications with that webpage and send them to the third party. The information travels directly from both the user's browser and the webpage owner's server and then on to the party's server, based off instructions from the third party's tracker. The communications and information transmitted via these trackers are entirely within Rocket Mortgage's control.

32.     Online Tracking Technologies may not be deleted from the consumers' device. They are built into the Website, and the consumer has no control or warning over their presence or data collection. Tracking Technologies cause information to flow directly from the consumers' browser and the website owner server to the third-party itself. The consumer cannot prevent or even detect the transmission of data.

33.     Here, Rocket Mortgage, employed an array of Tracking Technologies to intercept, duplicate, and redirect Plaintiff's in the Class Members' sensitive financial information to a third party, contemporaneously, invisibly, and without their knowledge or consent.

34.     When Plaintiff and the Class Members visited the Website and communicated their loan application information to Defendant Rocket Mortgage, that information was simultaneously intercepted and transmitted to third parties.

35.     One of the Tracking Technologies on the Rocket Mortgage Website is by a data broker called "Segment." Segment purports to be "[t]he leading customer data platform, powered by AI." Rocket Mortgage intentionally embedded computer code on its Website and programmed it to disclose its consumers' sensitive financial information with the third-party Segment (the "Segment Tracker"). The Segment Tracker duplicates Plaintiff's and Class Members' communications intended for Defendant Rocket Mortgage—including their mortgage application information—and transmits the content of those communications to Segment.

36.      Segment states that it is a "first-party data collection platform" and explains that it "is a tool that allows you to collect data from people who visit your website, use your products, or visit your physical locations."

37.    Once Segment collects first-party data from Rocket Mortgage consumers, it can process the data in many ways including further redisclosing consumer data with advertisers and creating comprehensive consumer profiles for otherwise anonymous consumers.

38.    Segment offers various integrations with companies like Meta, Snap, and Google—thus allowing the exchange of consumer data between the platforms including detailed information used for advertising and targeting consumers. For example, the "Snapchat Audiences Actions destination enables the sync of Engage audiences into Snapchat" therefore allowing Segment and Snap to exchange data on consumers for advertising purposes. Similarly, the Facebook (now Meta) integrations exchange data between the platforms to create audiences for advertising purposes: "Uses Facebook's Lookalike feature to target prospects who are similar to current audiences."

39.    Segment's Unify product creates consumer profiles from the first-party customer data it collects. Segment promises to "[s]ave time and compute costs by letting Segment build the complete history of each customer across all online and offline touchpoints into real-time, identity-resolved profiles" and "Explore all your user profiles in one place. Stitch together each customer's journey between multiple user sessions and devices with deterministic identity resolution, while enabling centralized privacy and governance." Indeed, Segment profiles promise to create a digital dossier of the consumers' activity across various devices.

40.    The key feature of Segment's profile is identity resolution allowing Segment to deanonymize consumers and to create a single profile of their activities and interests: "Identity resolution allows you to stitch together user behavior across platforms, anonymous or known state, or device, which allows you to see the entirety of a user's journey and combine their customer data into a single golden profile. It is essential for understanding customer needs and preferences, as well as creating personalized customer journeys…."

41.    Segment explains how its identity resolution works:

> Unify resolves user identities in a deterministic manner. The Identity Graph supports multiple external IDs without any additional code. Each incoming event is analyzed, the external IDs are extracted, and then the Unify identity resolution tool algorithm matches events with profiles. A simplified version of the algorithm is as follows: Segment first searches the Identity Graph for incoming external IDs. If Segment doesn't find a matching profile, a Profile is created for that user. If Segment finds one Profile, the event is logged onto that profile. If Segment finds multiple matching profiles, Segment

9

**CLASS ACTION COMPLAINT**

applies the identity resolution settings to add the event to the appropriate profile.

42.    When a consumer visits the Rocket Mortgage Website, Segment collects the consumer's sensitive financial information and creates a profile on them. Providing their contact information as part of the loan application, Segment supplements the customer profile with the newly acquired name, email, address, and phone number—and other attributes. If the consumer visits the Website again (perhaps at a later time or with a different device), Segment can identify the consumer by matching their activity with a pre-existing profile before he or she even provides any of his or her personal information.

43.    Armed with this single "golden profile," Segment can integrate with advertisers to use their data to further enrich its customer profiles and, in return, aid the advertiser is creating more detailed targeting profiles.

44.    The consumer data Segment intercepted is obviously for its own purpose. These consumer profiles are valuable to businesses and Segment charges extra for access to it Unify product. Segment monetizes the first party data collected from Plaintiff and the Class via their communications with the Rocket Mortgage Website.

45.    Twilio, Segment's parent company, admits that its group of companies that includes Segment use the collected data for its own purposes. The Twilio Privacy Notice explicitly states that it uses customers' collected data (such as the financial information collected from Rocket Mortgage consumers) for "[d]eveloping or improving our Services…" The Twilio Data Protection Addendum further states that Twilio that uses customer collected data "to develop and improve new products and services and improve the performance, functionality, safety, and security of the Services."

46.    Defendant Rocket Mortgage also installed trackers from other third parties, including Optimizely, Meta, Google, and DoubleClick. On information and belief, these trackers likewise transmitted Plaintiff's and the Class Members' activity on the Website without their knowledge or authorization.

47.    The Optimizely tracker allows Defendant to track and share with Optimizely 1) what actions a consumer took on the Website, 2) when the consumer visited the website, 3) where on the

Website the consumer performed these actions, and 4) how the consumer navigated through the Website.

48.     The Meta tracker, for example, tracks people and type of actions they take on a website. It is used to gather customer data, identify customers and potential customers, target advisements to those individuals, and market products and services. This includes actions like when a consumer visits a particular website, clicks a button, fills out a form, web browser information, and an ID associated to the Facebook user called the "c_user" id.

49.     The Meta tracker collects consumer interactions with the Website. Meta aggregates it to build its own massive, proprietary dataset, which Meta then uses to find new customers, drive sales, and understand ad impact. This is all to the benefit of the website owner, like Rocket Reach, Facebook as the third party, and other fourth parties, all of whom use the information for targeted marketing campaigns. Targeting works by allowing fourth parties to direct their ads at particular "Audiences," subsets of individuals who, according to Facebook, are the "people most likely to respond to your ad."

50.     The Google trackers allow Defendant to track and share with Google 1) who uses the Website 2) what is performed on the website; 3) when users visit the website; 4) where on the website users perform these actions; and 5) how users navigate through the website to perform these actions. Google gathers this information using trackers embedded on the Website and generates corresponding reports. DoubleClick is part of the suite Google uses to collect all of this. Google's collection of this data "enables advertisers to more effectively create, manage and grow high-impact digital marketing campaigns."

**D.     Rocket Mortgage Discloses Consumers' Financial Data**

**CLASS ACTION COMPLAINT**

51.      Visitors to the Rocket Mortgage Website begin by starting a new loan application. Consumers can apply for a new mortgage or refinance their existing mortgage using Rocket Mortgage's platform.



*Figure 1: image depicting the landing page for rocketmortgage.com leading to the form to be filled out.*

52.      Defendant Rocket Mortgage designed the loan application process to take place entirely online, and consumers apply for a mortgage by answering a series of questions on the Website:

> Rocket Mortgage® was designed to walk you through the entire mortgage process from application to closing. Our online application asks you a series of questions to evaluate your eligibility for a home loan. Then, we use the information you gave us, and information from your credit report, to provide you with mortgage recommendations and see if we can approve you.

53.      As part of a new mortgage applications, consumers provide sensitive and confidential information to Rocket Mortgage. Consumers provide their demographic information including their full name, phone number, email address, mailing address, marital status, and status as a veteran (including whether the consumer receives military benefits). Consumers also provide information about the new loan they are seeking including the property address, home purchase price, home type (single family, multifamily, condominium etc.), annual property tax amount, and annual homeowners' insurance amounts, Social Security Number, and permissions to do a soft credit check.

54.     Upon inputting the answers to the mortgage application and submitting the information to Rocket Mortgage, the Segment Tracker surreptitiously and without the consumers' knowledge and consent collects the form entries. Segment collects, *in real time*, sensitive information

```
    },
    "type":"identify",
    "userId":null,
    "traits":{
        "user_rvid":"930770dd-1f2b-4480-9974-adedb633a839",
        "user_id":null,
        "utm_campaign":null,
        "utm_content":null,
        "utm_cta":null,
        "utm_medium":null,
        "utm_source":null,
        "utm_term":null,
        "has_raid":false,
        "user_rocket_account_id":null,
        "user_rocket_mortgage_client_id":"b61ec824-59fa-4b38-b83a-9629da3e262b",
        "user_client_id":null,
        "utm_channel":null,
        "user_cooper_customer_id":null,
        "mortgage_est_purchase_price":null,
        "mortgage_purchase_state":"CO",
        "user_address_zip_code":"80302",
        "user_address_type":"mailing address",
        "user_address_street1":,
        "mortgage_est_home_value":1700000,
        "mortgage_current_living_situation":"homeowner",
        "entered_current_address":true,
        "mortgage_selling_home":null,
        "user_address_city":"Boulder",
        "mortgage_found_home":null,
        "mortgage_experience":null,
        "user_address_street2":null,
        "entered_email":true,
        "entered_phone":true,
        "entered_name":true,
        "military_service_type":null,
        "military_branch_of_service":null,
        "text_opt-in":false,
        "military_association":null,
        "marital_status":"single",
        "military":true,
        "military_va_disability_benefits":false,
        "mortgage_est_yearly_income":null,
        "user_first_name":,
        "user_last_name":,
        "user_phone":,
        "user_email":,
        "user_birth_year":null,
        "credit_score":0,
        "mortgage_loan_number_created":null,
        "user_goal":null
```

from their mortgage application.

```
},
"mortgage_entered_est_taxes":true,
"mortgage_has_hoa_dues":null,
"mortgage_property_type":"single_family_home",
"mortgage_est_yearly_property_taxes":8000,
"redfin_client_id":null,
"mortgage_property_use":"primary",
"redfin_browser_id":null,
"mortgage_payment_includes_property_tax":null,
"mortgage_est_balance_remaining":null,
"mortgage_entered_property_address":true,
"mortgage_est_yearly_homeowners_insurance":200,
"mortgage_seller_covering_costs":false,
"mortgage_earnest_deposit":false,
"mortgage_earnest_deposit_amount":null,
"external_agent_id":null,
"loan_number":"3580228597",
"mortgage_entered_est_insurance":true,
"mortgage_has_flood_insurance":false,
"mortgage_has_current_va_loan":null,
"mortgage_flood_insurance_included_in_mortgage":null,
"mortgage_current_home_usage":null,
"mortgage_rea_entered":false,
"mortgage_has_rea":true,
"mortgage_est_monthly_hoa_amount":null,
"mortgage_send_to_homes":null,
```

*Figures 2-3, showing Segment's collection of certain demographic information and financial information from the new loan application.*

55.     Similarly, consumers seeking to refinance their existing mortgage must submit a loan refinance application. Like the new mortgage application, consumer provide their demographic information along with information specific to their existing loan. These new additional application questions include the reason for wanting to refinance (such as wanting a lower payment), current home value and outstanding loan balance (allowing Rocket Mortgage to calculate the "loan to value" amount), whether the consumer previously filed for bankruptcy or had a foreclosure on their record, and their credit score.

56.     When the consumers submit their loan refinance application to Rocket Mortgage, the Segment tracker also collects the content of the application, in real time.

"traits":{
  "rvid":"930770dd-1f2b-4480-9974-adedb633a839",
  "user_rvid":"930770dd-1f2b-4480-9974-adedb633a839",
  "system_event_id":"20260115T231632-da053591-c7ec-40e0-8575-0744afb8da4a-30b4i508alfvKBFPL5Bf",
  "user_id":"",
  "utm_campaign":null,
  "utm_content":null,
  "utm_cta":null,
  "utm_medium":null,
  "utm_source":null,
  "utm_term":null,
  "is_authenticated":false,
  "has_raid":false,
  "user_rocket_account_id":null,
  "user_rocket_mortgage_client_id":null,
  "user_client_id":null,
  "user_cooper_customer_id":null,
  "utm_channel":null,
  "prefilled_client_information_lead_form":false,
  "user_goal":"refinance:lower_payment",
  "mortgage_est_purchase_price":null,
  "mortgage_purchase_state":"CO",
  "mortgage_pre_approval_lender":"other",
  "past_late_mortgage_payments":null,
  "mortgage_est_down_payment_percent":null,
  "past_bankruptcy":false,
  "mortgage_down_payment_assistance_needed":false,
  "mortgage_journey_finances":"established",
  "mortgage_est_home_value":1700000,
  "mortgage_journey_timeframe":null,
  "past_foreclosures":false,
  "mortgage_loan_to_value":0.74,
  "mortgage_est_down_payment_percentage_group":null,
  "mortgage_est_purchase_tier":null,
  "mortgage_experience":null,
  "military":false,
  "employment_status":null,
  "mortgage_journey_need":"rate_and_term",
  "entered_name":true,
  "entered_email":true,
  "entered_phone":true,
  "text_opt-in":false,
  "user_first_name":███████,
  "user_last_name":███████,
  "user_phone":████████████████,
  "user_email":███████,
  "entered_current_address":true,
  "self_reported_credit_score_range":"excellent"

*Figure 4: Screenshot showing form data collected by Segment when submitting a loan refinance application.*

57.    The information provided by consumers to Rocket Mortgage as part of their loan application—whether for a new mortgage or a mortgage refinance—is nonpublic personal information. This information is sensitive and its disclosure is strictly regulated under both the GLBA and the CFIPA requiring consumer consent prior to the disclosure to nonaffiliated parties.

58.    The problem is that Defendant Rocket Mortgage never informed consumers that it enabled a third-party, Segment and other trackers, to collect their sensitive financial information and certainly never obtained Plaintiff's and the Class members' consent of any kind. Even worse, Rocket Mortgage allowed Segment to collect loan application form information from Plaintiff and the Class

members before they had an opportunity to finalize their application and before they had an opportunity to even view any terms, agreements, or disclosures.

59.    Segment is not an affiliate of Defendant Rocket Mortgage. It's neither a parent or a subsidiary of Defendant, it is not controlled by nor controls Defendant Rocket Mortgage—it is an entirely independent third-party entity. Rocket Mortgage failed to obtain any consent from Plaintiff and Class Members to disclose their sensitive financial information to a non-affiliated company, Segment, let alone obtained sufficient consent as required under the Gramm-Leach-Bliley Act and the California Financial Information Privacy Act.

60.    Defendant utilized the information it collected for unauthorized uses: to market and bolster its profits by surreptitiously diverting the information to third parties like Segment.

61.    Defendant did not only collect consumers' sensitive financial information for its own use; Rocket Mortgage also shared—and continues to share—consumers' financial information with unauthorized third parties who then use it for their own benefit.

### PLAINTIFF'S EXPERIENCE

62.    Plaintiff Gary Fedoroff visited www.rocketmortgage.com in or around November of 2025 and navigated to the refinancing application section of Defendant's Website to complete a refinancing application in relation to his home mortgage.

63.    Plaintiff reasonably expected that the financial information provided during the refinancing application process would remain confidential between Plaintiff and Rocket Mortgage based on: (1) the inherently private nature of detailed personal financial information; (2) industry standards and legal requirements that mortgage lenders maintain confidentiality of loan applications; and (3) the absence of any clear, conspicuous disclosure that third parties would intercept Plaintiff's application data in real-time

64.    Plaintiff completed Rocket Mortgage's online refinancing application, which required him to provide detailed personal information including his full legal name, email address, phone number, and residential address.

65.    The refinancing application also required Plaintiff to disclose sensitive financial information that is not available in public records, including his estimated current home value,

requested refinance loan amount, current monthly mortgage payment, monthly homeowners insurance premium, monthly property tax payment, and the specific purpose of Plaintiff's refinance application.

66.     This information reveals intimate details about Plaintiff's financial circumstances, including his total monthly housing costs (mortgage + insurance + taxes), accumulated home equity (derived from property value and loan amount), financial decision-making and cash flow management strategy, and the timing and motivation for Plaintiff's refinancing decision.

67.     At no point before or during the application process did Rocket Mortgage clearly and conspicuously disclose that third-party technology companies would receive real-time access to Plaintiff's refinancing application data.

68.     Despite this, Segment's JavaScript code attached "event listeners" to form input fields through the Rocket Mortgage refinancing application, monitoring Plaintiff's interaction with the form. When Plaintiff clicked submit or continue, Segment's code triggered structured API calls that transmitted Plaintiff's data to Segment's API endpoints (cdn.segment.com or api.segment.io), where Segment received, processed, and permanently stored the data.  Importantly, this transmission occurred contemporaneously during Plaintiff's active session, intercepting the communications in real time as he completed the application.

69.     At no point did Rocket Mortgage obtain Plaintiff's informed, affirmative consent to transmit Plaintiff's application data to third parties as described herein.

70.     Unbeknownst to Plaintiff, Rocket Mortgage embedded tracking technology throughout its Website and mobile app, including on the pages containing the refinancing application form that Plaintiff completed.

71.     As Plaintiff completed and submitted the refinancing application, the tracking tools—operating pursuant to instructions from Rocket Mortgage—intercepted and transmitted his application data to in real-time.

72.     Plaintiff was unaware that Rocket Mortgage's Website contained tracking tools that were configured to (and did) collect and transmit the refinancing application data Plaintiff communicated to Rocket Mortgage, including the specific data fields Plaintiff provided.

73.    Plaintiff did not authorize, consent to, or have any knowledge that Segment would receive his refinancing application data in the manner described herein.

74.    Plaintiff never visited Segment's website, never agreed to Segment's terms of service, never read Segment's privacy policy, and had no direct relationship with Segment whatsoever.

75.    As a result of Rocket Mortgage's unauthorized disclosure of Plaintiff's refinancing application data, Plaintiff suffered immediate and concrete injury in the form of irreversible loss of confidentiality in sensitive, non-public financial information.

76.    The information disclosed—including Plaintiff's current monthly mortgage payment, insurance premiums, and home equity position—is not available in public deed records or any other public source.

77.    Plaintiff reasonably expected this information to remain confidential between Plaintiff and Rocket Mortgage. The disclosures to a third-party technology company with its own commercial interests violated Plaintiff's reasonable expectation of privacy.

78.    The disclosure is permanent and irreversible. For example, Segment stores customer data "for unlimited duration" and has embedded Plaintiff's financial information in its commercial Customer Data Platform, where it is used for identity resolution, profile building, predictive analytics, and activation to advertising platforms.

79.    Plaintiff cannot retrieve the disclosed information, cannot undo the privacy violation, and cannot prevent Segment's ongoing commercial exploitation of Plaintiff's financial data.

80.    Plaintiff has been injured by the unauthorized interception of his electronic communications with Rocket Mortgage, the disclosure of his non-public financial information to a third party, and the permanent embedding of Plaintiff's sensitive data in commercial surveillance infrastructure operated by Segment for Segment's own business purposes.

## CLASS ACTION ALLEGATIONS

81.    Class Definition: Plaintiff Fedoroff brings this proposed class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Classes of others similarly situated, defined as follows:

**Nationwide Class:** All individuals residing in the United States who have filled out a loan application or refinancing application on Defendant's Website.

**California Class:** All individuals residing in State of California who have filled out a loan application or refinancing application on Defendant's Website.

82. Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

83. Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

84. <u>Numerosity</u>, Fed R. Civ. P. 23(a)(1). The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are hundreds of thousands of individuals whose private information may have been improperly disclosed to third parties, and the Class is identifiable within Defendant's records.

85. <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3). Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

(a) Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

(b) Whether Defendant had duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

(c) Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information would be disclosed to third parties;

(d) Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

(e)  Whether Defendant adequately addressed and fixed the practices which permitted the disclosure of patient Private Information;

(f)  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class Members;

(g)  Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct; and

(h)  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of Defendant's disclosure of their Private Information.

86.    Typicality, Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of those of other Class Members because all had their Private Information compromised as a result of Defendant's incorporation of the Facebook Pixel, due to Defendant's misfeasance.

87.    Adequacy, Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights, and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

88.    Superiority and Manageability, Fed. R. Civ. P. 23(b)(3). Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against a large corporation like Defendant. Further,

even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

89.    Policies Generally Applicable to the Class. Fed. R. Civ. P. 23(b)(2). This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

90.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

91.    The litigation of the claims is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

92.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

93.    Unless a class-wide injunction is issued, Defendant may continue disclosing the Private Information of Class Members, Defendant may continue to refuse to provide proper

notification to Class Members regarding the practices complained of herein, and Defendant may continue to act unlawfully as set forth in this Complaint.

94.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

**CAUSES OF ACTION**

**COUNT I**
**Violations of Electronic Communications Privacy Act ("ECPA")**
**18 U.S.C. § 2511(1) *et seq*.**
**Unauthorized Interception, Use, And Disclosure**
**(On behalf of Plaintiff and the Nationwide Class)**

95.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

96.    The ECPA protects both sending and receipt of communications.

97.    18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

98.    The transmissions of Plaintiff's Private Information via Rocket Mortgages' use of Tracking Technologies qualifies as a "communication" under the ECPA's definition in 18 U.S.C. § 2510(12).

99.    **Electronic Communications**. The transmission of Private Information between Plaintiff and Class Members and Rocket Mortgage via its Tracking Technologies are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

100.    The ECPA defines content, when used with respect to electronic communications, to "include[] *any* information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8) (emphasis added).

101.    **Interception.** The ECPA defines the interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other

22
**CLASS ACTION COMPLAINT**

device" and "contents … include any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(4), (8).

102.    **Electronic, Mechanical, or Other Device**.    The ECPA defines "electronic, mechanical, or other device" as "any device … which can be used to intercept a[n] … electronic communication[.]" 18 U.S.C. § 2510(5). The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

(a)    Plaintiff's and Class Members' browsers;

(b)    Plaintiff's and Class Members' computing devices and mobile devices;

(c)    Rocket Mortgage's web-servers; and

(d)    The Tracking Technologies deployed by Rocket Mortgage to effectuate the sending and acquisition of consumer communications

103.    When Plaintiffs and Class Members interacted with Rocket Mortgage's website, Rocket Mortgage, through the Tracking Tools embedded and operating on its website, contemporaneously and intentionally disclosed, used, and redirected, and endeavored to disclose, use, and redirect, the contents of Plaintiff's and Class Members' electronic communications to third parties, including Segment, Facebook, and Google, without authorization or consent, and knowing or having reason to know that the electronic communications were obtained in violation of the ECPA. 18 U.S.C. § 2511(1)(c)-(d).

104.    Rocket Mortgage's intercepted communications include, but are not limited to, the contents of communications to/from Plaintiff and Class Members regarding their personal financial information and other private information.

105.    By intentionally disclosing or endeavoring to disclose the electronic communications of Plaintiff and Class Members to Segment, Facebook, and Google, , while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), VSP violated 18 U.S.C. § 2511(1)(c)-(d).

106.    Rocket Mortgage intentionally used the wire or electronic communications to increase its profit margins, and it specifically used the Tracking Technologies to track and utilize Plaintiff's and Class Members' private information for financial gain.

107.    Rocket Mortgage was not acting under color of law to intercept Plaintiff's and Class Members' wire or electronic communication.

108.    Plaintiff and Class Members did not authorize Rocket Mortgage to acquire the content(s) of their communications via the Tracking Technologies for purposes of invading their privacy.

109.    Any purported consent from Tracking Technologies received from Plaintiff and Class Members was not valid.

110.    **Unauthorized Purpose**. Rocket Mortgage intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a tortious or criminal act in violation of the Constitution or laws of the United States or of any State – namely, violations of HIPAA, breaches of confidence, invasion of privacy, among others.

111.    The ECPA provides that a "party to the communication" may be liable where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).

112.    Rocket Mortgage is a "party to the communication" with respect to Plaintiff's and Class Members' communications, but its simultaneous, unknown duplication, forwarding, and interception of Plaintiff's and Class Members' Private Information does not qualify for the party exemption.

113.    More specifically, Rocket Mortgage's acquisition of Plaintiff's and Class Members' communications, which were used and disclosed to unauthorized third parties, was done for the purpose of committing criminal and tortious acts in violation of the laws of the United States and California, including:

a)    Cal. Penal Code § 631, *et seq*.;
b)    18 U.S.C. § 2511(1)**;**
c)    Cal. Penal Code § 502, *et seq*.;
d)    Cal. Bus. & Prof. Code § 17200, *et seq.;*
e)    CFIPA
f)    GLBA
g)    The common law causes of action alleged herein.

114.    Rocket Mortgage is not exempt from ECPA liability under 18 U.S.C. § 2511(2)(d) on the ground that it was a participant in Plaintiff's and Class Members' communications because Rocket Mortgage used its participation in these communications to improperly share Private Information

with third-parties that did not participate in these communications (Meta, Google, and Segment) when Plaintiff and Class Members: (1) were unaware those third parties would receive their Private Information; and (2) did not consent to them receiving their Private Information.

115.    Rocket Mortgage accessed, obtained, and disclosed Plaintiff's and Class Members' Private Information for the purpose of committing the crimes and torts described herein because it would not have been able to obtain the information or the marketing services if it had complied with the law.

116.    As such, Rocket Mortgage cannot viably claim any exception to ECPA liability.

117.    Plaintiff and Class Members have suffered damages as a direct and proximate result of Rocket Mortgage's invasion of privacy.

118.    As a result of Rocket Mortgage's violation of the ECPA, Plaintiffs and Class Members are entitled to all damages available under 18 U.S.C. § 2520, including statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs.

### COUNT II
### Violation of the California Information Privacy Act ("CIPA")
### Cal. Pen. Code § 631 *et seq.*
### (On behalf of Plaintiff and the California Class)

119.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

120.    The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638.  The Act begins with its statement of purpose.

> The Legislature thereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630.

121.    California Penal Code § 631(a) provides, in pertinent part (emphasis added):

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner … willfully and without the consent of all parties to the communication, or in any unauthorized

manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or **who aids, agrees with, employs, or conspires** with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500).

122.     Under CIPA, Rocket Mortgage must show it had the consent of all parties to a communication.

123.     At all relevant times, VSP aided, employed, agreed with, and conspired with third parties, including Meta and Google, to track and intercept Plaintiffs' and Class Members' internet communications.  These communications were transmitted to and intercepted by a third party during the communication without the knowledge, authorization, or consent of Plaintiffs and Class Members.

124.     Rocket Mortgage intentionally inserted an electronic listening device onto Plaintiff's and Class Members' web browsers and devices that, without their knowledge and consent, tracked and transmitted the substance of their confidential communications to Segment, Meta, Google, and other unauthorized third parties—each of whom constitute a "person" within the meaning of the statute.

125.     Rocket Mortgage willingly facilitated the interception and collection of Plaintiff's and Class Members' Private Information by embedding Tracking Technologies on its website.

126.     Moreover, unlike past Meta business tools such as the Facebook Like Button and older web beacons, the Meta Pixel, Conversion API, Google Tag Manager, Google Analytics, Segment, and other Tracking Technologies are: (1) completely invisible to website users; and (2) Rocket Mortgage has full control over these tools, including where they are embedded, what information is tracked and transmitted, and how events are categorized prior to their transmission.

127.     Rocket Mortgage's Tracking Technologies constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, they fall under the broad catch-all category of "any other manner."

128.    Rocket Mortgage failed to disclose its use of the Tracking Technologies to specifically track and automatically and simultaneously transmit Plaintiff's and Class Members' communications to Segment, Meta, Google, and other undisclosed third-parties.

129.    A portion of the Tracking Technologies—such as Segment, the Meta Pixel, Google Analytics, and Google Tag Manager—are designed to transmit a website user's actions and communications contemporaneously as the user initiates each communication. As a result, the user's communications are intercepted in transit to the intended recipient—Rocket Mortgage—before reaching Rocket Mortgage's server.[1]

130.    Rocket Mortgage violated CIPA by aiding and permitting third parties to intercept and receive its consumers' online communications in real time as they were made. Importantly, Segment, Meta, Google, and other unauthorized third parties would not have intercepted or received the contents of these communications but for Rocket Mortgage's actions, including its decision to install the Tracking Technologies on its website.

131.    By disclosing Plaintiff's and Class Members' Private Information, Rocket Mortgage violated Plaintiff's and Class Members statutorily protected right to privacy.

132.    As a result of the above violations, and pursuant to § 637.2, Rocket Mortgage is liable to Plaintiff and Class Members for treble actual damages related to their loss of privacy in an amount to be determined at trial or for statutory damages in the amount of $5,000 per violation. Section 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the Plaintiffs have suffered, or be threatened with, actual damages."

133.    Under the statute, Rocket Mortgage is also liable for reasonable attorney's fees, litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by the Defendant in the future.

**COUNT III**
**Violation of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA")**

---

[1] Rocket Mortgage's use of Conversions API and similar server-side Tracking Technologies resulted in the divulgence, as opposed to the interception, of Plaintiff's communications.

**CLASS ACTION COMPLAINT**

**Cal. Penal Code §502**
**(On behalf of Plaintiff and the California Class)**

134.  Plaintiff incorporates the foregoing allegations as if fully set forth herein.

135.  Plaintiff repeats, re-alleges, and incorporates by reference preceding paragraphs above as if fully set forth herein.

136.  The California legislature enacted the CDAFA with the intent of "expand[ing] the degree of protection afforded to individuals . . . from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). The enactment of CDAFA was motivated by the finding that "the proliferation of computer technology has resulted in a concomitant proliferation of . . . unauthorized access to computers, computer systems, and computer data." *Id*.

137.  Plaintiff's and Class Members' devices constitute "computers" within the scope of the CDAFA.

138.  Defendants violated the following sections of the CDAFA:

139.  Section 502(c)(1), which makes it unlawful to "knowingly access[] and without permission . . . use[] any data, computer, computer system, or computer network in order to either
> (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or
> (B) wrongfully control or obtain money, property, or data;"

140.  Section 502(c)(2), which makes it unlawful to "knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network;"

141.  Section 502(c)(7), which makes it unlawful to "knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network."

142.  Defendants knowingly accessed Plaintiff's and Class Members' devices without their permission by implementing Tracking Technologies on the back end of their website that intercepts and transmits data, communications, and personal information concerning Plaintiff and Class Members.

143.  Defendants took, copied, intercepted, and made use of data, communications, and personal information from Plaintiff's and Class Members' devices.

144.    Defendants knowingly and without Plaintiff's and Class Members' permission accessed or caused their personal information to be intercepted by installing Tracking Technologies on their website.

145.    Plaintiff and Class Members are residents of California and used their devices in California. Defendant accessed or caused to be accessed Plaintiff's and Class Members' data, communications, and personal information from California. On information and belief, Defendant used servers located in California that allow Defendants to access and process the data, communications and personal information concerning Plaintiff and Class Members.

146.    Defendant was unjustly enriched by intercepting, acquiring, taking, or using Plaintiff's and Class Members' data, communications, and personal information without their permission, and using it for Defendant's own benefit. Defendant has been unjustly enriched in an amount to be determined at trial.

147.    As a direct and proximate result of Defendants' violations of the CDAFA, Plaintiff and Class Members suffered damages.

148.    Pursuant to CDAFA Section 502(e)(1), Plaintiff and Class Members seek compensatory, injunctive, and equitable relief in an amount to be determined at trial.

149.    Pursuant to CDAFA Section 502(e)(2), Plaintiff and Class Members seek an award of reasonable attorneys' fees and costs.

150.    Pursuant to CDAFA Section 502(e)(4), Plaintiff and Class Members seek punitive or exemplary damages for Defendants' willful violations of the CDAFA.

**COUNT IV**
**Violation of the Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the California Class)**

151.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

152.    California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

153.    Rocket Mortgage engaged in unlawful business practices in connection with its disclosure of Plaintiff's and Class Members' Private Information to unauthorized third parties, including Segment, Meta, and Google, in violation of the UCL.

154.    Rocket Mortgage's acts, omissions, and conduct, as alleged herein, constitute "business practices" within the meaning of the UCL.

155.    Rocket Mortgage violated the "unlawful" prong of the UCL by violating, *inter alia*, Plaintiff's and Class Members' constitutional rights to privacy, state and federal privacy statutes, and state consumer protection statutes.

156.    Rocket Mortgage's acts, omissions, and conduct also violate the unfair prong of the UCL because those acts, omissions, and conduct offend public policy (including the federal and state privacy statutes and state consumer protection statutes, such as the ECPA and CIPA) and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including Plaintiff and Class Members.

157.    The harm caused by Rocket Mortgage's conduct outweighs any potential benefits attributable to such conduct, and there were reasonably available alternatives to further Rocket Mortgage's legitimate business interests other than Rocket Mortgage's conduct described herein.

158.    Plaintiff and Class Members suffered from a loss of the benefit of their bargain with Rocket Mortgage because they overpaid for financial services they believed included data security and data practices sufficient to maintain their Private Information as confidential.

159.    As a result of Rocket Mortgage's violations of the UCL, Plaintiff and Class Members are entitled to injunctive relief. This is particularly true since the dissemination of Plaintiff's and Class Members' information is ongoing.

160.    As result of Rocket Mortgage's violations of the UCL, Plaintiff and Class Members have suffered injury-in-fact and lost money or property, including but not limited to payments to Rocket Mortgage for services and/or other valuable consideration, *e.g.*, access to their private and personal data.

161.    Plaintiff and Class Members would not have used Rocket Mortgage's services, or would have paid less for them, had they known Rocket Mortgage was breaching confidentiality and

disclosing their Private Information to social media and tech giants, such as Meta, Segment, and Google.

162.    The unauthorized access to Plaintiff's and Class Members' Private Information has also diminished the value of that information.

163.    In the alternative to those claims seeking remedies at law, Plaintiff and Class Members allege that there is no plain, adequate, and complete remedy that exists at law to address Rocket Mortgage's unlawful and unfair business practices.

164.    Plaintiff and Class Members are entitled to equitable relief to restore Plaintiff and Class Members to the position they would have been in had Rocket Mortgage not engaged in unfair competition, including an order enjoining Rocket Mortgage's wrongful conduct, restitution, and disgorgement of all profits paid to Rocket Mortgage as a result of its unlawful and unfair practices.

### COUNT V
### Invasion of Privacy Under California's Constitution
### (On Behalf of Plaintiff and the California Class)

165.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

166.    Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their Private Information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites to shop for home loans or refinancing options without being subjected to wiretaps, pin registers, and/or trap and trace devices without their knowledge or consent.

167.    By using Tracking Technologies to communicate individually identifying information alongside their confidential financial communications, Rocket Mortgage intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution. Plaintiffs and Class Members had a reasonable expectation that their communications, identity, financial information and other data would remain confidential, and that Rocket Mortgage would not install wiretaps, pin registers, and/or trap and trace devices to secretly transmit their communications and routing information.

168.    Plaintiff and Class Members did not authorize Rocket Mortgage to transmit their Private Information to third parties, nor did they consent to allowing third parties to intercept, receive, and view those communications.

169.    This invasion of privacy is serious in nature, scope, and impact because it relates to consumers' private financial communications. Moreover, it constitutes an egregious breach of the societal norms underlying the right of privacy.

170.    As a result of Rocket Mortgage's actions, Plaintiff and Class Members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

171.    Plaintiff and Class Members have been damaged as a direct and proximate result of Rocket Mortgage's invasion of their privacy and are entitled to just compensation, including monetary damages.

172.    Plaintiff and Class Members seek appropriate relief for this injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests.

173.    Plaintiff and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Rocket Mortgage's actions, directed at injuring Plaintiff and Class Members in conscious disregard of their rights.

174.    Such damages are needed to deter Rocket Mortgage from engaging in such conduct in the future.

175.    Plaintiff also seeks such other relief as the Court may deem just and proper.

**COUNT VI**
**Negligence**
**(On behalf of Plaintiff and the Nationwide Class)**

176.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

177.    Defendant owed Plaintiff and Class Members a duty to keep their Private Information completely confidential, and to safeguard sensitive personal and financial information under both the GLBA and CFIPA.

178.    Plaintiff and Class Members had reasonable expectations of privacy in their communications exchanged with Defendant, including communications exchanged on Defendant's Website.

**CLASS ACTION COMPLAINT**

179.    Contrary to its duties and its express promises of confidentiality, Defendant installed its Tracking Technologies to disclose and transmit to third parties Plaintiff's and Class Members' communications with Defendant, including Private Information and the contents of such information.

180.    These disclosures were made without Plaintiff's or Class Members' knowledge, consent, or authorization, and were unprivileged.

181.    The third-party recipients included, but may not be limited to, Segment, Facebook, and Google.

182.    As a direct and proximate cause of Defendant's unauthorized disclosures of consumer personally identifiable, non-public financial information, and communications, Plaintiff and Class members were damaged by Defendant's breach in that:

    a.   Sensitive and confidential information that Plaintiff and Class members intended to remain private is no longer private;

    b.   Plaintiff and Class members face ongoing harassment and embarrassment in the form of unwanted targeted advertisements;

    c.   Defendant eroded the essential confidential nature of the relationship;

    d.   General damages for invasion of their rights in an amount to be determined by a jury;

    e.   Nominal damages for each independent violation;

    f.   Defendant took something of value from Plaintiff and Class Members and derived benefit therefrom without Plaintiff's and Class Members' knowledge or informed consent and without compensation for such data;

    g.   Defendant's actions diminished the value of Plaintiff's and Class Members' Private Information; and

    h.   Defendant's actions violated the property rights Plaintiff and Class Members have in their Private Information.

**COUNT VII**
**Intrusion Upon Seclusion**
**(On behalf of Plaintiff and the Nationwide Class)**

183.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

184.    Defendant intentionally and without the Plaintiff's and the Class Members' authorization intruded into their seclusion. Specifically, Defendant intentionally embedded trackers

on its Website that collected sensitive financial information from the Plaintiff's and the Class Members' loan applications.

185.    Defendant knew that by installing trackers such as the Segment Tracker on its Website, it would allow an unaffiliated third party to intrude or pry into Plaintiff's and Class Members' sensitive financial information.

Plaintiff and the Class expect their financial information and their loan applications to remain private and not be disseminated to unknown third parties.

186.    Indeed, a reasonable person would find the disclosure of their sensitive financial information and the content of their loan applications without their knowledge or consent highly offensive and objectionable.

187.    Plaintiff and the Class Members suffered harm in the form of mental pain and anguish worrying how an unauthorized disclosure of their financial information to unknown third parties may affect their life. Plaintiff and the Class worry how this disclosure (1) may affect their ability to get a loan in the future, (2) whether nefarious actors may use their information to perpetuate identity theft and fraud, (3) who and for what purpose may have obtained their personal financial information, and (4) how Plaintiff and the Class may secure their sensitive financial information in the future, among other.

### COUNT VIII
### Breach of Confidence
### (On behalf of Plaintiff and the Nationwide Class)

188.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

189.    Plaintiff and the Class conveyed confidential information to Defendant when filling out a loan application on the Website. The information provided contained sensitive demographic and financial information that Defendant used or intended to use to determine mortgage eligibility.

190.    Defendant, being a financial institution, knew that the information it solicited from Plaintiff and the Class in its loan application was being conveyed in confidence. Not only is there an expectation that financial information is confidential; both Federal and state law require financial institution to keep information furnished to a financial institution to be confidential. *See e.g,* 18 U.S.C.§ 6801(a).

191.    As explained above, Defendant allowed trackers such as Segment to obtain sensitive financial information from Plaintiff's and the Class's loan application in breach of confidence.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Gary Fedoroff individually and on behalf of the Class, prays for the following relief:

a.    An order certifying the Class as defined above, appointing as the representative of the Class, and appointing his counsel as Class Counsel;

b.    An order declaring that Defendant's actions, as set out above, violate the ECPA, CIPA, CDAFA, UCL, and invasion of privacy under California's Constitution, negligence, intrusion upon seclusion, and breach of confidence;

c.    An injunction requiring Defendant to cease all unlawful activities;

d.    An award of statutory damages, disgorgement of profits, costs, and attorneys' fees; and,

e.    Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

By: *Heather M. Lopez*
Heather M. Lopez (SBN 354022)
**MILBERG, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90210
Telephone: (858) 209-6941
Email: hlopez@milberg.com

Albert Plawinski*
**PLAWINSKI, PLLC**
2101 Pearl St.
Boulder, Colorado 80302
Tel: (303) 720-7095
Email: albert@plawinski.law

*\*Pro Hac Vice Admission To Be Sought*

*Counsel for Plaintiff and the proposed Class*

**CLASS ACTION COMPLAINT**