Heather M. Lopez (SBN 354022)
**MILBERG, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA  90212
Tel: (331) 240-3015
Email: hlopez@milberg.com

Michael A. Acciavatti (*pro hac vice*)
**MILBERG, PLLC**
405 East 50th Street
New York, NY 10022
Tel: (212) 594-5300
macciavatti@milberg.com

Albert J. Plawinski (*pro hac vice*)
**PLAWINSKI, PLLC**
2101 Pearl Street
Boulder, CO 80302
Tel.: (303) 720-7095
albert@plawinski.law

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| GARY FEDOROFF, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROCKET MORTGAGE, LLC, a Michigan limited liability company,<br><br>Defendant. | Case No. 3:26-cv-00702-JSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT ROCKET MORTGAGE, LLC'S MOTION TO TRANSFER VENUE**<br><br>Date: June 11, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8 (19th Floor)<br>Judge: Hon. Jacqueline Scott Corley<br><br>Complaint Filed: January 22, 2026 |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 3

ARGUMENT ................................................................................................................. 4

    I.    There Is No Valid Contract Containing A Forum Selection Clause ................................... 4

        A.    Defendant Does Not Provide Competent Evidence To Establish A Valid Agreement ... 5

        B.    Defendant's Use of Optimizely Further Underscores Its Evidentiary Deficiencies ........ 6

        C.    Lack of Conspicuous Notice ................................................................................... 7

            1.    Placement of the Notice ................................................................................. 8

            2.    Context of the Transaction ............................................................................ 10

        D.    Plaintiff Did Not Unambiguously Manifested Assent To The Terms ........................... 13

    II.    Even If The Contract Is Valid, The Forum Selection Clause Is Unenforceable ............... 14

    III.    The Balance Of Section 1404(a) Factors Favors California ......................................... 16

        A.    The Eastern District Of Michigan Is Not An Appropriate Venue ............................... 17

        B.    The Forum Selection Clause Cannot Bootstrap The Interests-Of-Justice Analysis ...... 17

        C.    Plaintiff's Choice of Forum Is Entitled to Meaningful Deference ............................... 18

        D.    The Other Public-Interest and Convenience Factors Favor California. ....................... 18

            1.    The Relevant Contacts and Operative Facts ................................................... 18

            2.    Convenience of the Parties ............................................................................ 19

            3.    Convenience of Witnesses ............................................................................ 19

            4.    Access to Evidence ...................................................................................... 20

            5.    The Cost of Litigation .................................................................................. 21

            6.    Familiarity with Governing Law Favors California (Public Interest Factor) ............ 21

            7.    Court Congestion (Public Interest Factor) ...................................................... 22

            8.    California's Local Interest Is Substantial (Public Interest Factor) .......................... 23

CONCLUSION ............................................................................................................. 23

**TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*Abeyta v. DMCG, Inc.*,
    2023 WL 2918741 (N.D. Cal. Apr. 12, 2023) ............................................................... 15

*Alexander v. Superior Ct.,*
    114 Cal. App. 4th 723 (Cal. Ct. App. 2003) ............................................................... 15

*Allstar Marketing Group, LLC v. Your Store Online, LLC*,
    666 F.Supp.2d 1109 (2009).......................................................................................... 22

*Am. Vehicular Scis. LLC v. Hyundai Motor Co.*,
    2016 WL 6306061 (C.D. Cal. Apr. 27, 2016) ............................................................. 23

*Amberger v. Legacy Cap. Corp.*,
    2017 WL 264078 (N.D. Cal. Jan. 20, 2017) ............................................................... 21

*Amerson v. G.W. Williams Co.*,
    2018 WL 2021625 (N.D. Cal. May 1, 2018) ............................................................... 19

*Atlantic Marine Construction Co. v. U.S. District Court*,
    571 U.S. 49 (2013)................................................................................................... 4, 18

*B.D. v. Blizzard Ent., Inc.*,
    76 Cal. App. 5th 931 (Cal. Ct. App. 2022) ................................................................. 14

*Balestrieri v. SportsEdTV, Inc.*,
    2025 WL 2776356 (N.D. Cal. Sept. 16, 2025) ........................................................... 23

*Beltran v. Nationstar Mortg. LLC*,
    2026 WL 637337 (N.D. Cal. Mar. 6, 2026)................................................. 8, 9, 11, 17

*Bender v. Twilio Inc.,*
    2025 WL 2308484 (N.D. Cal. Aug. 11, 2025)............................................................. 10

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022)................................................................................. passim

*Besag v. Custom Decorators, Inc.*,
    2009 WL 330934 (N.D. Cal. Feb. 10, 2009)............................................................... 21

*Biederman v. FCA US LLC*,
    2024 WL 2818854 (N.D. Cal. June 3, 2024) ................................................... 18, 20, 22

*Brown v. Abercrombie & Fitch Co.*,
    2014 WL 715082 (N.D. Cal. Feb. 14, 2014)............................................................... 22

ii

*Cavanaugh v. Fanatics, LLC,*
  738 F. Supp. 3d 1285 (E.D. Cal. 2024)...................................................................................... 9

*Chabolla v. ClassPass Inc.,*
  129 F.4th 1147 (9th Cir. 2025).............................................................................................. 13

*Checchia v. SoLo Funds, Inc.,*
  771 F. Supp. 3d 594 (E.D. Pa. 2025) .................................................................................... 11

*Chess v. Romine,*
  2018 WL 5794526 (N.D. Cal. Nov. 2, 2018)......................................................... 16, 17, 18, 21

*Chin v. Thumbtack Inc,*
  2026 WL 807276 (N.D. Cal. Mar. 24, 2026) ......................................................................... 13

*Crano v. Sojern, Inc.,*
  2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) ................................................................ 4, 5, 6

*Dahdah v. Rocket Mortg., LLC,*
  166 F.4th 556 (6th Cir. 2026)................................................................................................ 11

*Dawson v. Target Corp.,*
  2025 WL 1651940 (N.D. Cal. June 11, 2025) ......................................................................... 8

*Decker Coal Co. v. Commonwealth Edison Co.,*
  805 F.2d 834 (9th Cir. 1986)................................................................................................. 18

*DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.,*
  28 F.4th 956 (9th Cir. 2022)................................................................................................... 4

*Doe v. Epic Games, Inc.,*
  435 F. Supp. 3d 1024 (N.D. Cal. 2020) ................................................................................ 19

*Edwards v. MUBI, Inc.,*
  773 F. Supp. 3d 868 (N.D. Cal. 2025) .................................................................................. 13

*Fontaine v. Sup. Ct.,*
  175 Cal. App. 4th 830 (Cal. Ct. App. 2009) .......................................................................... 16

*Fraser v. Brightstar Franchising LLC,*
  2016 WL 4269869 (N.D. Cal. Aug. 15, 2016).................................................................. 15, 16

*Gamayo v. Match.com LLC,*
  2011 WL 3739542 (N.D. Cal. Aug. 24, 2011)........................................................................ 21

*Gamble v. Penney Opco LLC,*
  791 F. Supp. 3d 1203 (D. Or. 2025) ..................................................................................... 12

iii

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. June 20, 2024) ........................................................................ 13

*Gill v. Chipotle Mexican Grill, Inc.*,
2025 WL 287320 (C.D. Cal. Jan. 23, 2025) .............................................................................. 9

*Godun v. JustAnswer LLC,*
135 F.4th 699 (9th Cir. 2025) ........................................................................................... 6, 13

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ................................................................................... 23

*Hirsch v. Credit9, LLC,*
2025 WL 3155936 (C.D. Cal. Oct. 2, 2025) ........................................................................... 12

*Kageta Tech LLC v. Ford Motor Co.*,
2024 WL 967666 (E.D. Cal. Mar. 6, 2024) ............................................................................. 23

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .................................................................................. 9, 10, 11

*L. W. A. v. LinkedIn Corp.*,
2025 WL 2780788 (N.D. Cal. Sept. 30, 2025) ........................................................................ 10

*Lawrence v. Finicity Corp.*,
2025 WL 547375 (9th Cir. Feb. 19, 2025) ............................................................................. 12

*Lax v. Toyota Motor Corp.*,
65 F. Supp. 3d 772 (N.D. Cal. 2014) ..................................................................................... 21

*Leanos v. Better Home & Finance Holding Company*,
2026 WL 962827 (N.D. Cal. Apr. 9, 2026) ............................................................................ 14

*Lee v. Panera Bread Co.*,
2023 WL 2606611 (E.D. Mich. Mar. 6, 2023) ....................................................................... 10

*Lee v. Plex, Inc.*,
773 F. Supp. 3d 755 (N.D. Cal. 2025) ................................................................................... 13

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) .......................................................................................... 10

*Lewis v. Liberty Mut. Ins. Co.*,
953 F.3d 1160 (9th Cir. 2020) .............................................................................................. 15

*Long v. Provide Com., Inc.*,
245 Cal. App. 4th 855 (Cal. Ct. App. 2016) .......................................................................... 14

iv

*Long, v. Alphabet Inc.*,
  2026 WL 1021121 (N.D. Cal. Apr. 15, 2026) ................................................................................ 8

*Losson v. Union des Associations Europeennes de Football*,
  2024 WL 3406987 (N.D. Cal. July 11, 2024) ............................................................................... 15

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ......................................................................................................... 18

*Martin v. Global Tel\*Link Corp.*,
  2015 WL 2124379 (N.D. Cal. May 6, 2015) ................................................................................ 17

*Mellen v. Dalton*,
  2022 WL 22996680 (W.D. Mich. Apr. 11, 2022) ......................................................................... 10

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) .............................................................................................. 5, 13, 14

*Oberstein v. Live Nation Ent., Inc.*,
  60 F.4th 505 (9th Cir. 2023) .................................................................................................... 7, 12

*Rodriguez, v. Thoratec Corporation*,
  2026 WL 1076833 (N.D. Cal. Apr. 20, 2026) ......................................................................... 20, 21

*Rowen v. Soundview Commc'ns, Inc.*,
  2015 WL 899294 (N.D. Cal. Mar. 2, 2015) .................................................................................. 15

*Rushing v. Williams-Sonoma, Inc.*,
  2025 WL 2391394 (N.D. Cal. Aug. 18, 2025) ............................................................................... 8

*Sarhadi v. Pear Health Labs, Inc.*,
  2025 WL 1350033 (N.D. Cal. Apr. 18, 2025) ............................................................................... 12

*Schouker v. Swarm Indus., Inc.*,
  2025 WL 948004 (N.D. Cal. Mar. 28, 2025) .......................................................................... 20, 22

*Sellers v. JustAnswer LLC*,
  73 Cal. App. 5th 444 (Cal. Ct. App. 2021) ......................................................................... 7, 8, 14

*Seneca v. Homeaglow, Inc*,
  2024 WL 750029 (C.D. Cal. Feb. 7, 2024) ................................................................................... 11

*Serrano v. Open Road Delivery Holdings, Inc.*,
  666 F. Supp. 3d 1089 (C.D. Cal. 2023) .......................................................................................... 9

*Snow v. Eventbrite, Inc.*,
  2021 WL 3931995 (N.D. Cal. Sept. 2, 2021) ................................................................................. 7

v

*Sonoda v. Amerisave Mortg. Corp.*,
2011 WL 2653565 (N.D. Cal. July 6, 2011) .................................................................................... 18

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) .......................................................................................................................... 17

*STX, Inc.v. Trik Stik,*
*Inc.*, 708 F.Supp. 1551 (N.D. Cal. Oct. 12, 1988) ........................................................................ 19

*Tangle, Inc. v. Buffalo Games, LLC*,
2023 WL 2774452 (N.D. Cal. Apr. 3, 2023) ................................................................................. 18

*Thanos v. Unum Life Ins. Co.*,
2015 WL 5770786 (N.D. Cal. Oct. 2, 2015) ............................................................................ 19, 20

*Walters v. Famous Transports, Inc.*,
488 F. Supp. 3d 930 (N.D. Cal. 2020) ........................................................................................... 22

*Whalen v. NBA Props., Inc.*,
2025 WL 1948591 (N.D. Cal. July 16, 2025) .................................................................................. 4

*Woolfson v. Conn Appliances, Inc.*,
2022 WL 3139522 (N.D. Cal. Aug. 5, 2022) ................................................................................. 20

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................................. 1, 3, 16, 18

Cal. Civ. Proc. Code § 395 .................................................................................................................. 15

Cal. Civ. Proc. Code § 395(b) ....................................................................................................... 15, 16

Cal. Civ. Proc. Code § 395(c) ............................................................................................................. 15

vi

**INTRODUCTION**

On March 30, 2026, Defendant, Rocket Mortgage, LLC ("Defendant") filed a motion to transfer. *See* ECF No. 22 ("Motion"). Defendant argues that while visiting its website to inquire about mortgage refinancing options, Plaintiff, Gary Fedoroff ("Plaintiff") agreed to Defendants online terms of use ("Terms") which purportedly included a forum selection clause. Defendant's Motion argues that pursuant to that clause, and the relevant 28 U.S.C. § 1404(a) factors, this case should be transferred to the Eastern District of Michigan.

Defendant's Motion turns on a threshold question: is there a valid and enforceable forum selection clause that would justify uprooting this case from California and transferring it to Michigan. The Court's analysis begins—and should end—with contract formation. Defendant bears the burden of proving that Plaintiff entered into a valid agreement. Defendant has not met that burden. Instead, Defendant submits a single, undated, static screenshot of the purported notice page and a generalized declaration, neither of which establish what Plaintiff actually encountered, when he encountered it, or how it appeared to him. Defendant's position is cast into further doubt by the nature of its own website. As alleged, Defendant employs online tools that enable variation in the content, sequence, and presentation of its website to users. Yet Defendant makes no effort to account for that variability or to demonstrate that the page presented to the Court is the page Plaintiff actually saw. Defendant's evidentiary deficiencies are dispositive.

Even setting these aside, Defendant's presentation of its Terms falls short of what is required to place a reasonable user on inquiry notice. First, the notice is not conspicuous. It is buried within a dense block of text addressing multiple unrelated subjects, displayed in the same font, size, and color as surrounding language, and visually overshadowed by other elements on the page. Nothing about the placement of the notice meaningfully draws a user's attention to the existence of a hyperlink let alone binding contractual terms within that hyperlink's separate document. Nor does the context of the transaction show an intent for a continual relationship. Plaintiff was not creating an account, enrolling in an ongoing service, or entering into any kind of binding relationship when the Terms were presented. At best Plaintiff was initiating a preliminary inquiry

1

into refinancing options—an interaction that does not naturally signal the formation of a contractual relationship.

There was also no manifestation of assent. Defendant attempts to characterize its process as one in which a user agrees to its Terms by clicking a button, but its own Terms make clear that assent is inferred from mere use of the website. The act of clicking "Confirm & continue" is not tied to any clear acknowledgment of the Terms, does not require review of those Terms, and does not constitute a meaningful expression of agreement. At most, Defendant's process reflects an attempt to impose Terms passively, without ensuring that users are aware of them or agree to them.

Even if Defendant could establish the existence of a contract—which it cannot—the forum selection clause it seeks to enforce is independently unenforceable under California law. California has enacted a specific statutory scheme governing venue in consumer credit transactions that reflects a strong public policy: consumers are entitled to litigate disputes arising from such transactions in forums convenient to them. Any attempt to contract around that protection are void and unenforceable. Given this, Defendant's attempt to require litigation in Michigan is contrary to the statute.

With no enforceable forum selection clause, the Court must evaluate Defendant's motion under the traditional framework. That analysis favors keeping this case in California. Plaintiff's choice of forum is entitled to substantial deference and should not be disturbed absent a strong showing of inconvenience, which Defendant cannot make. The relevant contacts and operative facts are centered in California, where Plaintiff accessed Defendant's website, provided his sensitive information, and suffered the alleged harm. Litigating in California is plainly more convenient for Plaintiff, while Defendant—a nationwide company—faces no meaningful burden from continuing the litigation here.

The convenience of witnesses, particularly third-parties, also weighs against transfer . This case involves the alleged transmission of sensitive data to third-party entities, many of which are located in California. Access to evidence does not favor transfer; the relevant materials are electronic and can be produced anywhere. Nor does the cost of litigation justify transfer, as modern litigation practices minimize any differences associated with geographic location.

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE          CASE NO. 3:26-cv-00702-JSC

The public interest factors overwhelmingly favor California as the more appropriate forum. California courts are deeply familiar with the laws that govern Plaintiff's claims, the docket conditions between the forums are neutral, and California has a substantial local interest in adjudicating disputes involving the alleged misuse of its residents' sensitive personal and financial information. That interest is particularly strong where, as here, the case implicates the privacy rights of California consumers and the conduct of companies operating within California's markets.

In short, Defendant has not carried its burden at any stage of the analysis. It has not proven the existence of a valid agreement, it cannot enforce the forum selection clause it invokes, and it cannot show that the balance of factors under a traditional § 1404(a) analysis justifies transfer. For these reasons, discussed more fully below, the Court should deny the Motion.

**BACKGROUND**

Plaintiff filed a class action complaint on January 22, 2026. *See* ECF No. 1 ("Compl."). Plaintiff alleges that Defendant operates one of the largest online mortgage lending platforms in the United States, allowing consumers to apply for home loans and mortgage refinancing entirely through its website. Compl. ¶¶ 1–2, 27. To obtain a loan, consumers, like Plaintiff, must provide highly sensitive personal and financial information, including their name, contact information, marital status, home value, loan amount, credit-related information, and other details reflecting their financial condition and eligibility for credit. *Id*. ¶¶ 3, 53. This information is confidential and subject to strict federal and state privacy protections. *Id*. ¶¶ 15–22, 23–26.

Unbeknownst to Plaintiff and Class Members, Defendant embedded tracking technologies throughout its website to intercept and transmit the contents of users' loan applications to third-party entities in real time. *Id*. ¶¶ 2–3, 30–34. These technologies—including tools operated by third parties such as Segment, Meta, and Google—duplicate consumers' communications with Defendant's website and send that data to third parties for analytics, profiling, and advertising purposes. *Id*. ¶¶ 35–38, 46, 48–50. As alleged, this transmission occurs contemporaneously with various consumer interactions on Defendant's website and is done, without notice or consent. *Id*. ¶¶ 3, 54, 57–58.

In November 2025, Plaintiff, a California resident, visited Defendant's website and completed a refinancing application while in California. *Id*. ¶¶ 62–65. Plaintiff provided detailed personal and financial information as part of that process. *Id*. Plaintiff reasonably expected that this information would remain confidential between himself and Defendant, particularly given the sensitive nature of mortgage application data. *Id*. ¶ 63. At no point did Defendant clearly disclose that third parties would receive Plaintiff's application data in real time, nor did Plaintiff provide consent to such disclosures. *Id*. ¶¶ 67, 69. Nevertheless, Defendant's tracking technologies intercepted and transmitted Plaintiff's information during the application process, resulting in the unauthorized disclosure of his sensitive information. *Id*. ¶¶ 68, 71–72.

## <u>ARGUMENT</u>

### I.   There Is No Valid Contract Containing A Forum Selection Clause

Defendant's Motion presumes the validity of a forum selection clause and argues that *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49 (2013) places a heavy burden on Plaintiff in opposing transfer here. *See* Motion at 5. However, "[t]he first question is whether the forum selection clause is valid and enforceable." *Crano v. Sojern, Inc.*, 2025 WL 2689267, at *3 (N.D. Cal. Sept. 19, 2025). And that is Defendant's burden. S*ee Whalen v. NBA Props., Inc.*, 2025 WL 1948591, at *3 (N.D. Cal. July 16, 2025) (Defendant has the burden of establishing the existence of a valid agreement).

Under California law,[1] the formation of a valid agreement requires mutual assent. *Berman*, 30 F.4th at 855. In the online context, mutual assent may be achieved by either showing that the website user had actual knowledge of the agreement or that the user was placed on inquiry notice. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). Here, Defendant does not contend that Plaintiff had actual knowledge; therefore, the question is whether Plaintiff was placed on inquiry notice of the Terms. In deciding inquiry notice, the Court must be satisfied that

---

[1] The question of whether there exists a valid online agreement is governed by state law. *See DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 963–64 (9th Cir. 2022). Here, California law applies because Plaintiff is a California resident who interacted with Defendant's website in California and suffered injury here. In any event, as Defendant suggests (*see* Motion at 7 n.1), there is no material conflict between California and Michigan law on contract formation. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 854 (9th Cir. 2022).

Defendant provided reasonably conspicuous notice of the Terms and that Plaintiff unambiguously manifested assent to them. *Berman*, 30 F.4th at 856.

### A. Defendant Does Not Provide Competent Evidence To Establish A Valid Agreement

As this Court recently held, when a party seeks to enforce a forum selection clause but offers incomplete factual proof, it fails to carry its threshold burden of establishing a valid agreement. *See Crano*, 2025 WL 2689267, at *3. In *Crano*, this Court denied transfer where the defendant did not provide sufficient evidence for the Court to conduct the required "fact-intensive" analysis of notice and assent. *Id.* at *4-*5. The dispositive problems in *Crano* were that defendant failed to "accurately reflect the totality" of the booking process because it offered only a partial version of what plaintiff would have seen when she booked a reservation on defendant's website. *Id*. at *4. Because of these failures, this Court held that defendant did not meet burden of demonstrating Plaintiff agreed to the terms. *Id*. at *4.

Here, Defendant provides the Court with a single static screenshot of an undated webpage containing a "Confirm & continue" button which sits below prompts for contact information and a dense paragraph of text. *See* ECF No. 22-12, ("Ex. 1"). Hidden within that text is an unassuming hyperlink to Defendant's Terms. *Id*.[2] Defendant asks this Court to assume that this screenshot reflects what Plaintiff encountered when he visited Defendant's website in November 2025.

But Defendant does not provide the Court with competent, let alone convincing, evidence of what Plaintiff actually interacted with on Defendant's website. Defendant does not provide the complete user flow, including the preceding or subsequent page(s) that Plaintiff would have seen. Defendant does not inform the Court what device Plaintiff used to interact with its website or how the page would have been presented on that specific device, which is important to establish whether the notice was visible without scrolling. Perhaps most importantly, Defendant's screenshot is undated and does not indicate when it was taken or whether it portrays the page Plaintiff saw during his visit in November 2025.

---

[2] The forum selection clause is available if the user clicks on the hyperlink to Defendant's Terms and scrolls to page four of six. *See* ECF No. 22-13 ("Ex. 2") at 5. In the Terms, the clause is not bolded, underlined, capitalized, italicized, or otherwise called out from the remainder of the text. *Id*.

Defendant also offer the generalized declaration of its own employee, which speaks about reviewing, analyzing, collecting, and identifying website records and being familiar with historic website content. *See* ECF No. 22-11, Declaration of Amy Courtney ("Courtney Decl.") ¶¶ 3-5. This declaration falls well short of authenticating the specific interface presented to this Plaintiff in his visit to the site. Although the declaration states that the page is a "true and correct screenshot of the submission page for Plaintiff's refinancing application" (*id*. at ¶ 10), it clearly is not. Common sense would dictate that the "Confirm & *continue*" button indicates there are additional steps in the process. Defendant states that Plaintiff *submitted* his refinancing application via chat on November 2, 2025 (*id*. at ¶ 9) but also states that Plaintiff submitted documents in support of the application (ostensibly the application could not be formally submitted for consideration without this documentation) between November 6 and November 14. *Id*. at ¶ 16. Although the declaration makes clear the declarant has familiarity with Defendant's website, it does not provide any type of technical proof such as a session capture, transaction or chat log, archived page state, or any other comparable record, showing the precise page Plaintiff encountered.[3]

These evidentiary omissions are fatal to Defendant's bid to enforce the forum selection clause because even "minor differences" in design elements may alter the result of the Court's analysis of inquiry notice. *Crano*, 2025 WL 2689267, at *4 (quoting *Godun v. JustAnswer LLC,* 135 F.4th 699, 709 (9th Cir. 2025)). Defendant's total lack of proof is the sort of incomplete evidentiary showing this Court rejected in *Crano* and the same result is warranted here.

**B. Defendant's Use of Optimizely Further Underscores Its Evidentiary Deficiencies**

The evidentiary shortfall described above is compounded by the fact that Defendant installed tracking technology from Optimizely on its website. *See* Compl. ¶¶ 46-47. Optimizely provides a suite of software tools that allows companies to deploy multiple variations of digital experiences—including unique forms and user flows—to different visitors through A/B testing.[4] These tools

---

[3] Defendant's collage of screenshots from other cases involving different companies, different page designs, and different transaction also does not move the needle. *See* ECF Nos. 22-2-10. Although they may show what courts have accepted or rejected elsewhere, they do not establish what Plaintiff encountered when he visited the Defendant's website.

[4] Optimizely, *Feature Experimentation*, https://www.optimizely.com/products/feature-experimentation (last visited Apr. 26, 2026).

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE          CASE NO. 3:26-CV-00702-JSC

enable businesses, like Defendant, to test and optimize different sequences and layouts presented during a user's experience with their website.[5] Through Optimizely, website operators can modify and reorder the sequence of on-page elements, allowing them to change what users actually see while visiting their website.[6] Defendant's installation and use of Optimizely tracking tools on its website therefore casts further doubt on whether Defendant's single static screenshot accurately portrays the notice page presented to Plaintiff at the time of the purported agreement. Defendant fails to account for the fact that Optimizely may cause multiple variants of the same page to be presented to users. Thus, Defendant has failed to meet its burden of establishing what notice was presented to Plaintiff and whether that notice satisfied the requirements of reasonably conspicuous notice and unambiguous manifestation of assent. *See Snow v. Eventbrite, Inc.*, 2021 WL 3931995, at *3 (N.D. Cal. Sept. 2, 2021) (opining on the importance of an accurate presentation of evidence of online agreements and web flows, particularly where evidence of variation exists).

## C. Lack of Conspicuous Notice

Even if the Court accepts that Defendant's screenshot is what was presented to Plaintiff (and it should not), Defendant's presentation of its Terms still fails to provide reasonably conspicuous notice to users. Both the placement of the notice and context of the transaction are important when determining whether notice of terms is reasonably conspicuous. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515-16 (9th Cir. 2023). Regarding placement, courts look at the location, font size, color, and contrast of the text advising a user of the terms. *See Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 473 (Cal. Ct. App. 2021) (considering "whether other elements on the screen clutter or otherwise obscure the textual notice"); *Long, v. Alphabet Inc.*, 2026 WL 1021121, at *1 (N.D. Cal. Apr. 15, 2026) (considering "whether the disclosure language is otherwise prominent or hidden on a cluttered page."). Courts often consider whether the other visual elements on the webpage, such as images or text, distract a user's attention away from the terms. *Rushing v. Williams-Sonoma, Inc.*, 2025 WL 2391394, at *3 (N.D. Cal. Aug. 18, 2025). In

---

[5] Optimizely, *Default Change Order*, https://support.optimizely.com/hc/en-us/articles/4410283416973-Default-change-order (last visited Apr. 26, 2026).

[6] Id.

addition to placement of the notice, courts must also consider "the full context of the transaction" to determine whether the notice is "sufficient to put an internet consumer on inquiry notice of contractual terms." *Sellers*, 73 Cal. App. 5th at 477.

### 1. Placement of the Notice

Defendant's Terms are not clearly presented or prominently displayed. Defendant tries to bind Plaintiff to Terms that are deeply buried in a deluge of text which addresses multiple ancillary issues, including text messaging rates, agreements regarding TCPA related arbitration, and digital marketing. *See* Ex. 1. Adding to the obfuscated nature of the Terms is the fact that they are the same color and size as this immediately surrounding text, and are not in all capital letters. *See Dawson v. Target Corp.*, 2025 WL 1651940, at *3 (N.D. Cal. June 11, 2025) ("The hyperlinks on the account creation and check-out screens are particularly problematic in this regard because they lack a contrasting color and are in the same black text as the majority of the text on the screens.") (citing cases). In comparison to other elements on the page, the Terms are smaller. *See* Ex. 1 (including a large drawing of a house above a prompt telling users to "get ready to explore refi options…") As Defendant points out, the only (barely) redeeming elements of the presentation of the Terms is that the hyperlink to them is underlined and bolded. *See* Motion at 2. But this is insufficient. *See Berman*, 30 F.4th at 857 ("[s]imply underscoring words or phrases ... will often be insufficient to alert a reasonably prudent user that a clickable link exists."); *Sellers*, 73 Cal. App. 5th at 481 ("the hyperlink to the terms of service is underlined, but does not otherwise draw the user's attention in any way").

Defendant heavily relies on *Beltran v. Nationstar Mortg. LLC*, 2026 WL 637337 (N.D. Cal. Mar. 6, 2026) for support (Motion at 8), but the notice in *Beltran* is distinct from Defendant's notice here. For one, this Court in *Beltran*—no less than five times—emphasized that the "blue" font of the hyperlink to the terms alerted users to the presence of a link and set the terms apart from the rest of the text because the blue color "contrasts the rest of the white page and the surrounding text, making it easier for a user to see the Terms." *Beltran*, 2026 WL 637337 at *5 ("'…the link to the Terms of [Use] is conspicuously distinguished from the surrounding text, *by a contrasting' blue font color* 'denoting the existence of a hyperlink.'") (quoting *Keebaugh v. Warner Bros. Ent. Inc.*,

8

100 F.4th 1005, 1020-21 (9th Cir. 2024) (emphasis added). Defendant's Terms here lack this feature, and this is important because "hyperlinks must be offset in a more obvious way than [] underlining." *Cavanaugh v. Fanatics, LLC*, 738 F. Supp. 3d 1285, 1296 (E.D. Cal. 2024) (finding the lack of contrasting color important and finding the terms were not reasonably conspicuous).

In addition, this Court noted in *Beltran* that the page with the terms on it was uncluttered such that "a reader would naturally see the notice before their eyes move to" the action button. *Beltran*, 2026 WL 637337 at *5. Here, on the other hand, the page containing notice of the Terms is cluttered. As noted above, the Terms are stuck in the middle of a very long and busy paragraph which combines the presentment of the Terms with a TCPA arbitration reference, and a separate consent to receive marketing calls and texts (including automated and prerecorded contacts). *See* Ex. 1. That matters because the more distinct and unrelated issues that are bundled into one dense paragraph, the more likely it is that a reasonable user's attention will be drawn away from any single topic, including the Terms. A typical user, confronted with this notice page, would understandably gloss over the inconspicuous hyperlink to the Terms.

This Court rightly distinguished the notice in *Beltran* from the notice in *Serrano v. Open Road Delivery Holdings, Inc.*, 666 F. Supp. 3d 1089 (C.D. Cal. 2023) noting that the *Serrano* "court gave significant weight to 'the failure to identify the hyperlink to Defendant's Terms of Use by more than mere underlining.'" *Beltran*, 2026 WL 637337 at *6 (quoting *Serrano*, 666 F. Supp. 3d at 1096. But a comparison to *Serrano* is apt here because Defendant chose to do the bare minimum to set the Terms apart from the surrounding text. *See Gill v. Chipotle Mexican Grill, Inc.*, 2025 WL 287320, at *4 (C.D. Cal. Jan. 23, 2025) (where hyperlinks are not in contrasting color or all capital letters they "fail[] [the Ninth Circuit's] conspicuousness test.") (quoting *Berman*, 30 F.4th at 857).

Defendant string cites a number of cases, and includes their corresponding screenshots, but each is distinguishable from the notice here. *See* Motion at 8-10; *See* ECF Nos. 22-2-10. In *Keebaugh*, the Ninth Circuit found conspicuous notice because, unlike here, defendant used "[c]ustomary design elements denoting the existence of a hyperlink[,]" including contrasting font color. *Keebaugh*, 100 F.4th at 1021 (quoting *Berman*, 30 F.4th at 857). The Ninth Circuit in *Ticketmaster* emphasized the prototypical blue font of a hyperlink in finding conspicuous notice.

9

*Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394–95 (9th Cir. 2020). In *L. W. A.*, while no contrasting font color was present, and the terms were only bolded and underlined (as is the case here) the court specifically praised defendant because "the hyperlinks are not buried in text or otherwise placed in a confusing location..." which is precisely the opposite of what Defendant did here. *L. W. A. v. LinkedIn Corp.*, 2025 WL 2780788, at *4 (N.D. Cal. Sept. 30, 2025). In *Bender*, no one element was dispositive; rather, a series of stylistic choices by the website operator lead to conspicuous notice, including: the lack of clutter on the page; the font size of the notice being the same as other text on the page; and the fact that the notice "appears in two subsequent login pages after the user has created an account." *See Bender v. Twilio Inc.,* 2025 WL 2308484, at *3 (N.D. Cal. Aug. 11, 2025). In *Mellen*, the court called the formatting of the advisal language a "close call" and relied mainly on the context of the transaction (creation of an account), and plaintiff's subsequent receipt of an email with the notice of terms to satisfy conspicuous notice—neither apply here. *See Mellen v. Dalton*, 2022 WL 22996680, at *1, *8-9 (W.D. Mich. Apr. 11, 2022). In *Lee*, seemingly plaintiff's entire argument over whether the notice was reasonably conspicuous came down to the color of the hyperlinks, but as the court rightly noted, it was giving weight to the significance that the hyperlinks (whether blue or green) were "contrasting the rest of the text in grey." *Lee v. Panera Bread Co.*, 2023 WL 2606611, at *4 (E.D. Mich. Mar. 6, 2023), *report and recommendation adopted*, 2023 WL 2603934 (E.D. Mich. Mar. 22, 2023). Defendant's advisal page here lacks some or all of the elements that these courts found to be significant.

2.  Context of the Transaction

Defendant also argues that the context of the transaction supports an ongoing relationship and thus militates in favor of finding reasonably conspicuous notice. *See* Motion at 10-12. "Courts also consider the transactional context: i.e., whether consumers believe they are engaging in a one-off transaction, such a purchasing an article of clothing, or entering continuing relationship that would naturally require terms and conditions." *Seneca v. Homeaglow, Inc*, 2024 WL 750029, at *4 (C.D. Cal. Feb. 7, 2024), *aff'd sub nom. Seneca v. Homeaglow Inc.*, 2025 WL 852896 (9th Cir. Mar. 19, 2025). However, even if this factor were in Defendant's favor (and for the reasons below it is not) it is "non-dispositive" under California law. *See Keebaugh*, 100 F.4th at 1019.

10

Defendant cites *Dahdah v. Rocket Mortg., LLC*, 166 F.4th 556, 578–79 (6th Cir. 2026), to argue that a mortgage refinancing inquiry is the type of transaction where a user would expect an ongoing relationship. *See* Mot. at 10. But in *Dahdah*, the court referred to its context of the transaction inquiry as a "close call" and placed emphasis on the exact type of transaction that plaintiff was engaging in, which is completely different from transaction at issue here. Contrary to what the caption of the case suggests, *Dahdah* was not in relation to Defendant's website here (rocketmortgage.com, *see* Compl. ¶ 1), but rather a separate referral website called lowermybills.com. *Dahdah*, 166 F.4th at 562. Lowermybills.com was a referral website that "matches users with potential lenders." *Id*. Based on this, the Court could not "say the objective user would fail to anticipate some sort of continuing relationship" because plaintiff was affirmatively seeking referral to other lenders (and the concomitant subsequent communication from these lenders). *Id*. at 578–79.[7]

Here, Defendant's notice page does not suggest that Plaintiff is requesting a continuing relationship with the website operator—in fact, it shows the opposite. For example, Defendant's page is not an account creation page. *Compare Beltran*, 2026 WL 637337, at *2-*5 (account creation page used to manage and pay a mortgage over time), *with* Ex. 1. Rather, it is a noncommittal start of a refinancing inquiry. It plainly invites the user to "Confirm your contact info and discover what's possible." Ex. 1. The operative button reads "Confirm & continue." Id. On its face, that language denotes the *beginning* of an inquiry into potential mortgage refinancing options, it does not evidence intent to formalize a long-term relationship with a mortgage refinancing company.

Defendant's other cases, cited for the proposition that Plaintiff engaged in an "ongoing relationship," are distinguishable. *See* Motion at 10-11. For example, *Oberstein*, required a full registration process which is not present here (*Oberstein*, 60 F.4th at 517) and the user in *Hirsch* was forced to create an account and explicitly signed up for continual credit monitoring services.

---

[7] The same is true for the out of circuit case, *Checchia*, that Defendant cites. *See* Motion at 11. There, the very essence of the services being rendered (connecting borrowers with lenders) necessarily required ongoing, future communication with third parties. *Checchia v. SoLo Funds, Inc.*, 771 F. Supp. 3d 594, 608 (E.D. Pa. 2025).

*Hirsch v. Credit9, LLC,* 2025 WL 3155936, at *6 (C.D. Cal. Oct. 2, 2025). The same is true for *Sarhadi*, where the plaintiff was, again, required to create an account with defendant. *Sarhadi v. Pear Health Labs, Inc.,* 2025 WL 1350033, at *6 (N.D. Cal. Apr. 18, 2025).[8]

Here, Defendant does not contend that Plaintiff was required to engage in any sort of registration or account creation process or that Plaintiff was doing anything other than softly inquiring about refinancing options. In fact, Defendant concedes that, to the extent Plaintiff created any account, it was created *before* Plaintiff was presented with the notice page in November 2025. *See* Courtney Decl., ¶ 16 ("Plaintiff accessed an account *previously created* with Rocket Mortgage and submitted documents in support of his refinancing application" during November 2025) (emphasis added). Conveniently, Defendant does not provide any documentation about that account creation page or the availability or presentation of its Terms when Plaintiff purportedly created that account.

Defendant next tries to argue that Plaintiff's repeat visits to its site, after the November 2, 2025 chat conversation, constitute evidence of an ongoing relationship with Defendant. *See* Motion at 11. However repeated visits do not change the calculus when those visits are void of any classic examples of conduct consistent with an ongoing relationship. *See Gamble v. Penney Opco LLC*, 791 F. Supp. 3d 1203, 1212 (D. Or. 2025) (even in the face of repeated, subsequent visits, defendant failed to prevail on the "context of the transaction" inquiry because it did not show any conduct consistent with an ongoing relationship including "creating an account requiring completion of a registration process, entering a free trial period, and downloading an application to their phone") (citing *Godun*, 135 F.4th at 709-10). Again, none of these hallmark actions were done in this case.[9] At the very least, on the record Defendant presents, ambiguity exists. At the time notice was allegedly presented to Plaintiff, it was reasonable for him to assume he was providing contact

---

[8] Defendant's citation to *Lawrence* is also unavailing. *See* Motion at 11. In that case, plaintiff explicitly signed up for an ongoing data-sharing subscription utilizing the user's bank login information—a very different prospect than a mortgage refinancing inquiry. *Lawrence v. Finicity Corp.*, 2025 WL 547375, at * 2 (9th Cir. Feb. 19, 2025).

[9] Additionally, Defendant's argument is logically flawed. Defendant cannot use *post hoc* reasoning—showing Plaintiff's actions after encountering the notice page—to show what he should have expected at the time the notice was presented to him.

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE          CASE NO. 3:26-cv-00702-JSC

information in exchange for seeing available mortgage refinancing options and not that he was entering into a continuous relationship with Defendant such that any contractual strings would attach. Under these circumstances, the context of the transaction "neither weighs in favor of nor against the notice requirement." *Edwards v. MUBI, Inc.*, 773 F. Supp. 3d 868, 882 (N.D. Cal. 2025) (quoting *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1156 (9th Cir. 2025).

**D. Plaintiff Did Not Unambiguously Manifested Assent To The Terms**

Defendant's failure to provide Plaintiff with reasonably conspicuous notice of the Terms is dispositive. *See Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 766 (N.D. Cal. 2025). Therefore, addressing assent is not required. However, to the extent the Court reaches this question, it should find in favor of Plaintiff.

Courts primarily recognize two categories of online agreements: (1) "clickwrap" agreements—where users are required to affirmatively click a button, or check a box, agreeing to be bound by terms and (2) "browsewrap" agreements, where terms are available via hyperlink and users are deemed to assent to them via use of the website. S*ee Nguyen,* 763 F.3d at 1175–77. Lying somewhere in the middle are so called "sign-in wrap" agreements where "a user is notified of the existence of the website's terms of use and advise[d] that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service." *Chin v. Thumbtack Inc*, 2026 WL 807276, at *6 (N.D. Cal. Mar. 24, 2026) (quoting *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 923 (N.D. Cal. June 20, 2024) (internal quotation omitted).

Here, Defendant attempts to characterize its notice page as a "sign-in wrap" agreement by arguing that Plaintiff accepted the Terms by clicking the "Confirm & Continue" button. *See* Courtney Decl., ¶10-11; Motion at 4, 8. But Defendant's process does not require any user to access the hyperlink, open the Terms, or check a box indicating that the user has accessed, read, or agrees to the terms. Instead, Defendant's Terms bind users by virtue of their *use of the website* and is not contingent upon clicking any buttons. *See* Ex. 2 ("by *accessing or using the Website*, you agree to be bound by these Terms and our Privacy Policy. If you do not agree, you must not use the Website.") (emphasis added). To be sure, the plain language of the Terms makes clear that the moment a user accesses Defendant's website, long before they are allegedly confronted with the

"Confirm & continue" button or the notice page, they are subject to the Terms. Therefore, the act of clicking the "Confirm & continue" button is superfluous to whether a user is bound by the Terms, and thus cannot serve as an unambiguous manifestation of assent.

This means that, contrary to being a "sign-in wrap" agreement, Defendant's process is actually a classic, dubious "browsewrap" agreement. *See Nguyen*, 763 F.3d at 1176 (a pure browsewrap agreement is where a user agrees to terms "by visiting the website—something that the user has already done."); *Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 858 (Cal. Ct. App. 2016) (In a "browsewrap" agreement, "a user's assent is inferred from his or her use of the Web site."). Numerous courts in this circuit have indicated their wariness of enforcing such "browsewrap" agreements. S*ee Nguyen,* 763 F.3d at 1178, n. 2 (citing cases); *see Leanos v. Better Home & Finance Holding Company*, 2026 WL 962827, at *6 (N.D. Cal. Apr. 9, 2026) ("the Ninth Circuit has disfavored 'browsewraps' — wherein terms 'are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website,' without having to click the hyperlink") (quoting *Berman*, 30 F.4th at 856 (9th Cir. 2022)).[10]

## II.   Even If The Contract Is Valid, The Forum Selection Clause Is Unenforceable

Even where a valid contract exists, and it contains a forum-selection clause, the clause will not be enforced if "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision[.]" *Losson v. Union des Associations Europeennes de Football*, 2024 WL 3406987, at *3 (N.D. Cal. July 11, 2024) (quoting *Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1165 (9th Cir. 2020)); *Abeyta v. DMCG, Inc.*, 2023 WL 2918741, at *3 (N.D. Cal. Apr. 12, 2023) ("[A] contractual forum selection clause is unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought.") (internal quotations omitted). "[C]ourts tether their policy analysis to the forum selection clause itself, finding the forum selection clause unreasonable only when it contravenes a policy

---

[10] To the extent the Court disagrees, and considers Defendant's process a "sign-in wrap" agreement, it should treat Plaintiff's clicking of the "Confirm & continue" button as "largely passive" assent and defer its analysis on "the existence of a contract [] on whether a reasonably prudent offeree would be on inquiry notice of the terms at issue" which Defendant has failed to prove (*see supra.* § I.C). *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 946 (Cal. Ct. App. 2022) (quoting *Sellers,* 73 Cal.App.5th at 466) (cleaned up).

---

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE          CASE NO. 3:26-cv-00702-JSC

specifically related to venue." *Fraser v. Brightstar Franchising LLC*, 2016 WL 4269869, at *5 (N.D. Cal. Aug. 15, 2016) (quoting *Rowen v. Soundview Commc'ns, Inc.*, 2015 WL 899294, at *4 (N.D. Cal. Mar. 2, 2015). Here, California has enacted a specific statutory scheme governing venue in consumer credit transactions—evidencing a strong public policy against enforcement of such clauses and rendering Defendant's Michigan forum selection clause void and unenforceable.

Cal. Civ. Proc. Code § 395(b) provides that actions "arising from an offer or provision of goods, services, loans or extensions of credit intended primarily for personal, family or household use" must be brought "where the buyer or lessee resides, where the buyer or lessee in fact signed the contract, where the buyer or lessee resided at the time the contract was entered into, or where the buyer or lessee resides at the commencement of the action." Cal. Civ. Proc. Code § 395(b). Section 395(c) expressly provides that "[a]ny provision of an obligation described in subdivision (b) waiving that subdivision is void and unenforceable." Cal. Civ. Proc. Code § 395(c).

California courts have recognized that this exact provision reflects a "strong public policy" designed to protect consumers from being forced to litigate these types of claims in inconvenient forums. *See e.g.*, *Abeyta*, 2023 WL 2918741, at *4 (invalidating an inconsistent venue provision because § 395(b) "reflects the strong public policy of California); *see also Alexander v. Superior Ct.,* 114 Cal. App. 4th 723, 731-32 (Cal. Ct. App. 2003) ("Since the venue statutes themselves declare the public policy of this state with respect to the proper court for an action, agreements fixing venue in some location other than that allowed by statute are a violation of that policy."). Moreover, the California Legislature amended Section 395 to better protect consumers by permitting them to litigate in a forum convenient to them, and prohibit attempts to circumvent this right. *See Fontaine v. Sup. Ct.,* 175 Cal. App. 4th 830, 839 (Cal. Ct. App. 2009) (citing legislative history explaining that the purpose of amending Section 395(b) was to vindicate "the better policy [of] permit[ting] venue in the county of the residence of the injured consumer-plaintiff").

This case arises from Plaintiff's attempt to submit a refinancing application to Defendant— a quintessential "offer or provision of … loans or extensions of credit intended primarily for personal, family or household use" within the meaning of Section 395(b). There is no serious dispute that a residential mortgage inquiry or application falls within the statute's scope. Plaintiff

completed this application while residing in Marin County, California. *See* Compl. ¶¶ 10, 62-64. Since venue for cases regarding such a transaction must be brought in the county where the consumer signed the contract, resided at the time of contracting, or resides at the commencement of the action, this Court should decline to enforce Defendant's Michigan forum selection clause.

\*   \*   \*

As demonstrated above, Defendant cannot carry its threshold burden to invoke the Michigan forum selection clause in this case. The record lacks competent evidence of a reasonably conspicuous notice or mutual assent, and the purported agreement fails under well-settled Ninth Circuit standards governing online contracting. Even assuming *arguendo* that some agreement exists, the clause itself is independently unenforceable because it contravenes California's strong public policy mandating that consumer credit disputes be litigated in forums convenient to the consumer. In either scenario, the result is the same: there is no valid and controlling forum-selection clause to displace the ordinary § 1404(a) transfer analysis.

### III.   The Balance Of Section 1404(a) Factors Favors California

Where, as here, no valid and controlling forum selection clause governs the dispute, the Court evaluates Defendants' request under the familiar framework of 28 U.S.C. § 1404(a). *Chess v. Romine,* 2018 WL 5794526, at \*5 (N.D. Cal. Nov. 2, 2018). That statute permits transfer only where the proposed transferee forum is one in which the action "might have been brought," and where transfer would serve "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a); *Fraser v. Brightstar Franchising LLC*, 2016 WL 4269869, at \*6 (N.D. Cal. Aug. 15, 2016).

Defendant has the burden of demonstrating that, on balance, the relevant considerations of convenience and fairness strongly favor transfer. *Chess*, 2018 WL 5794526 at \*5. Courts undertake an "individualized, case-by-case consideration of convenience and fairness," weighing a non-

exhaustive set of private and public[11] interest factors. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Those factors include:

> (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time to trial in each forum.

*Chess*, 2018 WL 5794526 at *5 (quoting *Martin v. Global Tel*Link Corp.*, 2015 WL 2124379, at *2 (N.D. Cal. May 6, 2015)). No single factor is dispositive, and the analysis is committed to the Court's broad discretion. *Chess*, 2018 WL 5794526 at *5-6.

### A. The Eastern District Of Michigan Is Not An Appropriate Venue

Defendant argues that the Eastern District of Michigan is an appropriate venue because Defendant is headquartered there and subject to personal jurisdiction. Motion at 13. However, as discussed above, forcing venue anywhere outside the Northern District of California is disallowed by statute. *See supra*. § II.

The Northern District of California, however, is an appropriate venue because Plaintiff interacted with Defendant's website from California and suffered harm here. *See* Compl. ¶¶ 62, 64, 65, 68. In addition, the Northern District of California has personal jurisdiction over Defendant, which deliberately avails itself of California markets and solicits California consumers, including Plaintiff. *See id*. at ¶¶ 12-13.

### B. The Forum Selection Clause Cannot Bootstrap The Interests-Of-Justice Analysis

Defendant argues that the interests of justice favor transfer because "the parties contractually agreed to that forum." Motion at 13. But if the Court finds that no valid agreement exists (*supra*. § I), or that the forum selection clause is unenforceable (*supra*. § II), this consideration is irrelevant to the traditional § 1404(a) analysis. The Court should not allow an invalid or unenforceable forum selection clause to serve as a pillar of the interests-of-justice

---

[11] For ease of reference, the "public" interest factors—which, if this Court decides that a valid and enforceable forum selection clause applies, the Court must still address (*see Beltran*, 2026 WL 637337 at *8)—are noted as such below.

17

inquiry. *Atl. Marine*, 571 U.S. at 62–63 (the relevance of a forum selection clause to § 1404(a) depends entirely on its validity).

### C. Plaintiff's Choice of Forum Is Entitled to Meaningful Deference

Plaintiff's choice of forum should be entitled to substantial weight and meaningful deference. *Chess*, 2018 WL 5794526 at \*6; *see Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). Defendant's attempts to minimize Plaintiff's choice of forum by invoking the putative class nature of this action is unavailing. *See* Motion at 6, 17. Defendant cites *Lou*, but in that case, plaintiff's choice of forum was afforded less weight because "the operative facts [had] not occurred within the forum and the forum [had] no interest in the parties or subject matter." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

Here, Plaintiff resides in California and the operative conduct giving rise to his claims (*i.e.*, his website visit, his submission of personal and financial information, and the alleged interception and disclosure of that information) occurred in California. *See* Compl. ¶¶ 62–65, 68; *Tangle, Inc. v. Buffalo Games, LLC*, 2023 WL 2774452, at \*6 (N.D. Cal. Apr. 3, 2023) (plaintiff's choice of forum afforded full weight where harm and damages are alleged to have occurred in that forum). In addition, nearly all of Plaintiffs' claims arise under California law (*see* id. ¶¶ 119-191) and Plaintiff asserts a California class alongside a nationwide class. *See* id. ¶ 81; *see Biederman v. FCA US LLC*, 2024 WL 2818854, at \*2–3 (N.D. Cal. June 3, 2024) (in a putative class action, this Court found that plaintiffs choice of forum (California) had a strong interest in the dispute, warranting deference because: all named plaintiffs were California residents; the conduct giving rise to the claims took place in California; and the claims arose predominantly under California law); *see also Sonoda v. Amerisave Mortg. Corp.*, 2011 WL 2653565, at \*4 (N.D. Cal. July 6, 2011) (collecting cases on same).

### D. The Other Public-Interest and Convenience Factors Favor California.

#### 1. The Relevant Contacts and Operative Facts

Defendant contends that "all of the relevant events occurred in Detroit, Michigan," where it is headquartered, maintains its operations, and makes its policy decisions. *See* Motion at 14 (citing

18

Courtney Decl. ¶¶ 6–8). This framing fundamentally mischaracterizes the locus of the claims. Plaintiff accessed Defendant's website from California, entered his personal and financial information in California, and alleges that Defendant's conduct—namely, the interception, use, and disclosure of that information—caused harm to him in California. *See* Compl. ¶¶ 62-80.Therefore, Plaintiff's claims (and those of the California Class), which involve internet-based conduct, are centered in California, not Michigan.

### 2. Convenience of the Parties

Plaintiff is an individual consumer who resides in California. Requiring him to litigate this case in Michigan would impose a significant burden, including the cost and disruption of cross-country travel for hearings, depositions, and trial. Defendant, by contrast, is one of the nation's largest mortgage companies, with the demonstrated ability to conduct business in every state, including California, and cannot plausibly claim that litigating in California is unduly burdensome.

### 3. Convenience of Witnesses

Courts in this district, including this one, treat the convenience of party witnesses as a less important factor. *See Amerson v. G.W. Williams Co.*, 2018 WL 2021625, at *3 (N.D. Cal. May 1, 2018); *STX, Inc.v. Trik Stik Inc.*, 708 F.Supp. 1551, 1556 (N.D. Cal. Oct. 12, 1988) (the inconvenience of party witnesses is afforded less weight because they can be compelled to testify); *Thanos v. Unum Life Ins. Co.*, 2015 WL 5770786, at *3 (N.D. Cal. Oct. 2, 2015) (same). Therefore, Defendant's argument that transfer would be more appropriate because its own witnesses are in Michigan rings hollow. *See* Motion at 15. Moreover, Defendant fails to identify any specific witnesses who would be burdened by traveling to California from Michigan in the unlikely scenario that their appearance becomes necessary. *See Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020) (where defendant fails to identify witnesses who would be inconvenienced, it cannot carry its burden on the witness convenience factor).[12]

[12] Additionally, of note, travel of Defendant's witnesses may be entirely moot. Depositions can, and often are, conducted near where the witness resides. And, with modern technology, parties routinely use videotaped depositions for trial testimony. Both of these undercut any meaningful inconvenience argument about witness travel.

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE          CASE NO. 3:26-CV-00702-JSC

Instead, under this factor, the court's primary consideration should be the convenience of third-party witnesses. *See Rodriguez, v. Thoratec Corporation*, 2026 WL 1076833, at *6 (N.D. Cal. Apr. 20, 2026); *Nicholas Thanos, M.D. v. Unum Life Ins. Co.*, 2015 WL 5770786, at *3 (N.D. Cal. Oct. 2, 2015) ("[T]he convenience of non-party witnesses is more important than the convenience of the parties."). This is oft considered the most important factor in deciding a motion to transfer. *Schouker v. Swarm Indus., Inc.*, 2025 WL 948004, at *4 (N.D. Cal. Mar. 28, 2025) (citing cases).

Here, Plaintiff claims that Defendant *enabled third-parties* to collect users' sensitive financial information through tracking technology implemented on its website. *See e.g.*, Compl. ¶¶ 33. These third parties include Segment (id. at ¶ 42), Meta (id. at ¶ 49), and Google (id. at ¶ 50) all of which are companies based in the California.[13] Their convenience, therefore, would favor denying transfer. Defendant also has not identified any third-party witnesses who would be inconvenienced by litigating in California. *See Biederman*, 2024 WL 2818854 at *3 (where defendant fails to make a showing of whether non-party witnesses would face inconvenience if transfer is granted, it fails to meet its burden) (citing *Woolfson v. Conn Appliances, Inc.*, 2022 WL 3139522, at *7 (N.D. Cal. Aug. 5, 2022)).

### 4.  Access to Evidence

This is a case about digital tracking technology surreptitiously installed on a website. The relevant evidence, source code, tracking pixel configurations, server-side data transmission logs, third-party vendor contracts, analytics dashboards, and advertising platform records, are overwhelmingly electronic and readily transferable. Courts routinely treat the location of such electronically stored documents as a neutral factor given modern technology. *See Chess*, 2018 WL 5794526 at *7 (citing *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 780 (N.D. Cal. 2014) ("the

---

[13] *See* Twilio Inc., Annual Report (Form 10-K) (Feb. 24, 2026) (Segment principal executive offices in San Francisco, California), available at: https://www.sec.gov/ixviewer/doc?action=display&source=content&filename=twlo-20251231.htm; Meta Platforms, Inc., Annual Report (Form 10-K) (Feb. 5, 2026) (Meta principal executive offices in Menlo Park, California), available at: https://www.sec.gov/ixviewer/doc?action=display&source=content&filename=meta-20251231.htm; Alphabet Inc., Annual Report (Form 10-K) (Feb. 4, 2026) (Google principal executive offices in Mountain View, California), available at: https://www.sec.gov/ixviewer/doc?action=display&source=content&filename=goog-20251231.htm.

location of documents is increasingly irrelevant in the age of electronic discovery, when thousands of pages of documents can be easily digitized and transported to any appropriate forum."); *see also Rodriguez*, 2026 WL 1076833 at *6. Defendant has made no showing that any evidence exists solely in physical form in Michigan and cannot be produced electronically.

### 5. The Cost of Litigation

Defendant argues that transfer will reduce litigation costs because most (of its own) witnesses are in Michigan. *See* Motion at 15–16. This argument assumes that witness travel will be the primary driver of litigation costs, a doubtful premise in a case that will be litigated largely through electronic discovery, expert witness testimony, and class certification briefing. And, again, remote deposition and videoconferencing technology is now standard practice in federal litigation. The marginal difference in witness travel costs, where necessary, does not constitute a strong showing of inconvenience required to justify transfer.

### 6. Familiarity with Governing Law Favors California (Public Interest Factor)

Contrary to Defendant's assertions (Motion at 16) the parties have not "agreed" that Michigan law applies to this case. The validity of the contract allegedly containing that purported choice of law clause is, in fact, hotly contested. *See supra*. § I. Moreover, the Court's determination regarding the forum selection clause "is separate and distinct from choice of law provisions that are not before the court." *Besag v. Custom Decorators, Inc.*, 2009 WL 330934, at *4 (N.D. Cal. Feb. 10, 2009). Indeed, once venue is established, "[P]laintiff is free to argue for application of California law." *Amberger v. Legacy Cap. Corp.*, 2017 WL 264078, at *3 (N.D. Cal. Jan. 20, 2017) (citing *Gamayo v. Match.com LLC*, 2011 WL 3739542, at *6 (N.D. Cal. Aug. 24, 2011) (collecting cases).

Setting that aside for now, Defendant argues (Motion at 16) that the Eastern District of Michigan has "vastly more experience" with Michigan law—that may be true.[14] However, Plaintiff brings most of his claims under California law, including, the California Invasion of Privacy Act ("CIPA") (Compl. ¶¶ 119-33), the California Comprehensive Computer Data Access and Fraud

---

[14] Defendant concedes that courts in the Eastern District of Michigan "regularly apply California law" (Motion at 16), which undermines the very argument Defendant is making.

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE       CASE NO. 3:26-cv-00702-JSC

Act ("CDAFA") (id. at ¶¶ 134-50), California's Unfair Competition Law ("UCL") (id. at ¶¶ 151-64), and Invasion of Privacy under the California constitution (id. at ¶¶ 165-75). "Because most of Plaintiff's claims allege a violation of California law or involve interpreting California law, this factor weighs against transfer." *Schouker v. Swarm Indus., Inc.*, 2025 WL 948004, at *5 (N.D. Cal. Mar. 28, 2025); *see Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 940 (N.D. Cal. 2020) ("this Court is likely more familiar with the nuances of California law than would be a federal court in another state.") (internal quotations omitted).

### 7.   Court Congestion (Public Interest Factor)

California federal courts consistently apply the principle that "administrative considerations such as docket congestion are given little weight in this circuit in assessing the propriety of a §1404(a) transfer." *Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F.Supp.2d 1109 (2009). Nonetheless, "[t]his factor examines whether a trial may be speedier in another court because of its less crowded docket… [and] compare[s] the two fora's median time from filing to disposition or trial." *Brown v. Abercrombie & Fitch Co.*, 2014 WL 715082, at *6 (N.D. Cal. Feb. 14, 2014). Where such statistics are comparable the factor "does not support transfer." *Biederman*, 2024 WL 2818854 at *4.

Defendant's own citation to statistics neutralizes this factor. While time from filing to trial may be marginally longer in this Court, the time from filing to disposition (any final outcome) is actually less—7.5 months in the Northern District of California as compared to 8.2 months in the Eastern District of Michigan.[15] Moreover, this District's higher caseload reflects its status as a national center for complex technology and consumer privacy litigation. As a result, this Court has undoubtedly developed substantial expertise in the precise categories of claims at issue here, digital tracking, data interception, and consumer data privacy, which the Eastern District of Michigan simply does not share.

---

[15] *See* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics, 40, 66 (December 31, 2025), *available at* https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf.

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE          CASE NO. 3:26-cv-00702-JSC

8.    California's Local Interest Is Substantial (Public Interest Factor)

Defendant failed to address this factor and opine as to whether California has a strong interest in adjudicating the disputes at issue here. The answer is a resounding "yes." California has made clear it highly values the privacy and rights of consumers within the state. Through CIPA, CDAFA, and related statutes, California's legislature has enacted the nation's most robust framework for consumer data protection, reflecting a deliberate policy judgment that California residents deserve strong privacy protections enforced in California courts.

That interest is particularly pronounced here, where Plaintiff, a California resident, alleges that a national company deployed tracking technologies on its website to intercept and monetize sensitive financial information submitted during a home refinancing application. Courts looking at this factor in the context of a motion to transfer agree that "California has a particularly high interest in enforcing its consumer privacy law[s]." *Balestrieri v. SportsEdTV, Inc.*, 2025 WL 2776356, at *5 (N.D. Cal. Sept. 16, 2025); *see Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1044-45 (S.D. Cal. 2023) (recognizing California's substantial local interest in protecting privacy, grounded in the California Constitution's explicit right to privacy and reflected in the breadth and depth of its statutory privacy regime).[16]

## CONCLUSION:

For the foregoing reasons, Defendant's Motion should be denied.

---

[16] Defendant cites *Kageta Tech LLC v. Ford Motor Co.*, 2024 WL 967666 (E.D. Cal. Mar. 6, 2024) and *Am. Vehicular Scis. LLC v. Hyundai Motor Co.*, 2016 WL 6306061 (C.D. Cal. Apr. 27, 2016) for the proposition that Michigan is "the center of gravity" for this case and transfer is appropriate. *See* Motion at 17. Both cases involved patent infringement claims where the accused product design, engineering decisions, or infringing conduct occurred was in Michigan. *See* Kageta, 2024 WL 967666 at *3; *Hyundai*, 2016 WL 6306061 at *7. Those patent related claims were subject to a much different analysis than claims here.

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE          CASE NO. 3:26-CV-00702-JSC

Dated: April 27, 2026                          Respectfully Submitted,

                                               /s/ Heather M. Lopez
                                               Heather M. Lopez (SBN 354022)
                                               **MILBERG, PLLC**
                                               280 S. Beverly Drive, Penthouse
                                               Beverly Hills, CA  90212
                                               Tel: (331) 240-3015
                                               Email: hlopez@milberg.com

                                               Michael A. Acciavatti (*pro hac vice*)
                                               **MILBERG, PLLC**
                                               405 East 50th Street
                                               New York, NY 10022
                                               Tel: (212) 594-5300
                                               macciavatti@milberg.com

                                               Albert J. Plawinski (*pro hac vice*)
                                               **PLAWINSKI, PLLC**
                                               2101 Pearl Street
                                               Boulder, CO 80302
                                               Tel.: (303) 720-7095
                                               albert@plawinski.law

                                               *Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **April 27, 2026**. I further certify that all participants in the case are registered CM/ ECF users and that service will be accomplished by the CM/ECF system.

Dated: April 27, 2026                          /s/ Heather M. Lopez
                                               Heather M. Lopez

PLAINTIFF'S OPPOSITION TO MOTION TO TRANSFER VENUE          CASE NO. 3:26-cv-00702-JSC